## DEITRING, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, February 7, 1905.

1. **STREET RAILWAYS: Rights of Pedestrians.** A person passing upon the street and the street railway company operating its cars thereon have equal rights to the use of the thoroughfare.

2. ———: ———. And the pedestrian has the additional right to presume, unless he knows to the contrary, or by the exercise of ordinary care might know, that the street railway company will operate its cars at the lawful rate of speed.

3. ———: **Excessive Speed: Negligence Per Se.** The operation of a street car at a rate of speed exceeding that fixed by ordinance is negligence *per se*.

4. ——: **Duty of Pedestrian.** It is the duty of a passer upon a street, when about to go upon or approach a street car track, to look and listen for approaching cars and exercise due care to avoid a possible collision with such cars.

5. ——: ——: **Right to Presume Speed Lawful.** Where a passer upon the street, when about to cross the street car track, looked and saw a car approaching at a distance which would have enabled him to cross in safety had the car been going at a lawful rate of speed, but was unable to discern that the speed was excessive, he was justified in crossing the track and in relying upon the street railway company's agent to operate the car at a lawful rate of speed.

6. ——: **Duty of Motorman: Vigilant Watch Ordinance.** And it was the duty of the motorman operating the car, under the vigilant watch ordinance, after seeing the pedestrian approaching the track, or from the time by the exercise of ordinary care he could have seen him, to exert every available effort and employ every available appliance to avoid injuring him.

7. ——: ——: **Last Chance.** And under the last chance rule, the prior negligence of a pedestrian in approaching the track would not excuse the motorman from the performance of such duty or prevent a recovery for the injuries caused by his failure to perform it.

8. **PRACTICE: Demurrer to Evidence.** The trial court in passing upon a demurrer to the evidence should place the most favorable construction possible on plaintiff's theory of the evidence, allowing every inference that could be reasonably deduced from the evidence in his behalf.

9. **STREET RAILWAYS: Injury by Collision: Prima Facie Case.** Where the evidence of plaintiff, an old man, slightly deaf, in an action against a street railway company for injuries received by a collision with a car at a crossing, showed that when within three feet of the track he saw a car approaching, with excessive speed, about 150 feet away, but could not discern that it was travelling at a speed in excess of the fifteen miles an hour limited by ordinance, continued across the track, was struck and injured, the question of whether he was guilty of contributory negligence was properly submitted to the jury.

10. ——: ——: ——. And where the evidence tended to show that the motorman could have seen the plaintiff 200 feet away, that the gong was rung only fifty feet before striking the plaintiff, that the car ran 150 or 200 feet after the collision before it could be stopped, and that a car can ordinarily be stopped in a car length, thirty-eight feet, and when going at thirty or thirty-five miles an hour, in 150 feet, whether or not the defendant was negligent was properly submitted to the jury.

11. ———: ———: Last Chance: Contributory Negligence.    In such an action, instructions on the part of the defendant denying recovery on the finding of contributory negligence on the part of the plaintiff, in getting upon the track, were properly refused, where they left out of consideration the duty of the motorman under the last-chance rule.

12. ———: ———: Ignoring Testimony.    Likewise such instructions based upon contributory negligence were improper where they ignored important testimony offered by plaintiff upon that issue.

13. ———: Duty of Pedestrian.    A person about to cross a street railway track is not required to "stop, look and listen." He is required to "look and listen" but not to "stop."

14. ———: Speed Ordinance.    In an action for injuries received by a collision with a street car at a crossing, the evidence examined and held that the ordinance limiting the speed to fifteen miles an hour, covered the territory where the accident occurred.

15. ———: ———: Timely Objection.    Objection to the consideration of the issues raised by the ordinance on the ground that it did not cover the territory where the accident occurred, could not be raised for the first time in the appellate court where that objection was not urged to the introduction of the ordinance in the trial court and was not raised in the motion for new trial.

16. ———: ———: ———: Self-Invited Error.    And where issues arising upon the ordinance were submitted to the jury upon instructions asked by the appellant at the trial, the alleged error was invited by it and it cannot complain on appeal.

17. ———: ———.    The passage of an ordinance regulating the rate of speed of street railways is a proper police regulation and it is not necessary to show its acceptance by a street railway company in order to base an action, for injuries received by a collision with a street car, upon the defendant's negligence in failing to observe the ordinance.

Appeal from Lincoln Circuit Court.—*Hon. Houston W. Johnson*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann, Martin & Woolfolk* and *Norton, Avery & Young* for appellant.

(1) The defendant offered peremptory instructions at the close of plaintiff's evidence and again at

the close of all the evidence that under the evidence plaintiff could not recover, which instruction the court refused. Guyer v. Railway, 174 Mo. 350, 73 S. W. 584. But plaintiff in a very ingenious way seeks by his evidence to relieve himself of the responsibilities thrown upon him by the law under these circumstances. First, he claimed defective hearing; this would not relieve him unless he could bring personal. knowledge to the motorman of this defect; in fact, if his hearing was defective as it certainly was if his evidence is to be believed, it should have made him more careful in approaching the place of danger, for he knew .of this defect, a thing the defendant did not know. Reames v. Dry Goods Co., 99 Mo. App. 396, 73 S. W. 935. (2) It would be impossible under the doctrine of contributory negligence as defined by the courts of this State, and every other jurisdiction so far as we know, for plaintiff to recover if he went upon that track and was injured without using his senses of sight and hearing. Kelsey v. Railway, 129 Mo. 372, 30 S. W. 339; Holwerson v. Railway, 157 Mo. 216, 57 S. W. 770. (3) If the plaintiff was negligent then, even though we might concede that the defendant's motorman was guilty of running the car at a prohibited rate of speed, the fact would still remain that the plaintiff was likewise guilty of negligence. Concurrent with the negligence of the motorman, and that the injury was the result of the concurrent negligence of both, under such circumstances the law is well-settled that plaintiff-is not entitled to recover. Kreis v. Railway, 148 Mo. 321, 49 S. W. 877; Shipton v. Railway, 82 Mo. App. 143; Killion v. Railway, 86 Mo. App. 473. And hundreds of other cases we might refer to in this and other jurisdictions, supporting this doctrine. It seems very clear to us that, when we take this evidence as given and take it in connection with the facts and circumstances surrounding the case, and especially apply the physical facts brought out by the evidence. Weltmer v. Bishop,

174 Mo. 116; Keown v. Railway, 141 Mo. 91, 41 S. W. 926; Weaver v. Railway, 66 Mo. App. 207, that these demurrers should have been sustained by the lower court and that this court should reverse the case, because of the lower court's refusal to so sustain these demurrers.

*Seneca N. & S. C. Taylor* for respondent.

(1)   An electric street railway company operating dangerous machinery at a rapid speed in a populous city is bound to know that pedestrians have an equal right to the use of street crossings; therefore it is the duty of the motorman to be on the lookout and to take all reasonable measures to avoid injuring such persons passing over the tracks at a street crossing, and failure to do so is negligence.   Priesmeyer v. Transit Co., 102 Mo. App. 518, 77 S. W. 313; Twelkemeyer v. Transit Co., 102 Mo. 190, 76 S. W. 682; Kolb v. Transit Co., 102 Mo. App. 143, 76 S. W. 1050; Pope v. Railway, 99 Mo. 405, 12 S. W. 891; Winters v. Railway, 99 Mo. 517, 12 S. W. 652; Senn v. Railway, 108 Mo. 142, 18 S. W. 1007; Henry v. Railway, 113 Mo. 525, 21 S. W. 214; Sweeny v. Railway, 150 Mo. 385, 51 S. W. 682; Klockenbrink v. Railway, 172 Mo. 678, 72 S. W. 900; Schafstette v. Railway, 175 Mo. 152, 74 S. W. 826; Riska v. Railway, 180 Mo. 168, 79 S. W. 445; Hays v. Railway, 106 Fed. 48; Robinson v. Railway, 112 Fed. 484; Railway v. Whitcomb, 66 Fed. 915; Lapontey v. Carthage Co., 116 Mich. 514; O'Neil v. Railroad, 129 N. Y. 125; Coke v. Traction Co. (Md.), 31 Atl. Rep. 327; Benjamin v. Railway (Mass.), 35 N. E. 95; Driscol v. Railway (Mass.), 34 N. E. 171; Robyns v. Railway (Mass.), 42 N. E. 334.
(2)   When a motorman discovers, or by the exercise of reasonable care might have discovered, an old man crossing a railroad track a short distance ahead of his car, upon a public street crossing, it is the duty of the motorman, to have the power by which he propels the

car under his control, so as to avoid a collision, if by reasonable care he can do so, and failure of this duty is negligence, making the railway liable. Murray v. Transit Co., 108 Mo. App. 501, 83 S. W. 995; Degel v. Transit Co., 101 Mo. App. 56, 74 S. W. 156; Sepetowski v. Transit Co., 102 Mo. App. 110, 76 S. W. 693; Oates v. Railway, 168 Mo. 544, 68 S. W. 906; Hutchinson v. Railway, 88 Mo. App. 383. (3) If it was negligence, on the part of plaintiff (which we positively deny), in crossing defendant's track, on the occasion in question, still, it was the duty of the motorman after seeing him in danger, or if by the exercise of ordinary care he could have seen him in danger, in time to have prevented the collision to have averted it, if it could be done by the exercise of ordinary care, and failure to do so would be negligence. Cooney v. Elec. Co., 80 Mo. App. 226; Moore v. Transit Co., 95 Mo. App. 729, 75 S. W. 699; Gebhardt v. Transit Co., 97 Mo. App. 380, 71 S. W. 448; Moritz v. Railway, 102 Mo. App. 657, 77 S. W. 477; Grocery Co. v. Railroad, 89 Mo. App. 399; Meyers v. Transit Co., 99 Mo. App. 371, 73 S. W. 379; Dairy Co. v. Transit Co., 98 Mo. App. 20, 71 S. W. 726; Morrissey v. Ferry Co., 43 Mo. 384; Brown v. Railroad, 50 Mo. 466; Meyers v. Railroad, 59 Mo. 231; Matthews v. Elev. Co., 59 Mo. 478; Harland v. Railroad, 60 Mo. 25; Werner v. Railroad, 81 Mo. 368; Bergman v. Railroad, 88 Mo. 685; Dunkman v. Railroad, 95 Mo. 244, 4 S. W. 670; Jennings v. Railroad, 99 Mo. 394, 11 S. W. 999; Henry v. Railroad, 113 Mo. 525, 21 S. W. 214; Morgan v. Railroad, 159 Mo. 262, 60 S. W. 195; Holden v. Railroad, — Mo. —. (4) The violation of the city ordinance as to speed, on the occasion in question was negligence *per se*, and it directly contributed to plaintiff's injuries. Hutchinson v. Railroad, 161 Mo. 246, 61 S. W. 635, 852; Jackson v. Railroad, 157 Mo. 621, 58 S. W. 32; Prewitt v. Railroad,

134 Mo. 615, 36 S. W. 667; Gratiot v. Railroad, 116 Mo. 450, 21 S. W. 1094; Bluedhorn v. Railroad, 108 Mo. 439, 18 S. W. 1103; Hanlon v. Railroad, 104 Mo. 381, 16 S. W. 233; Murray v. Railroad, 101 Mo. 237, 13 S. W. 817; Kellny v. Railroad, 101 Mo. 68, 13 S. W. 806; Gruebe v. Railroad, 98 Mo. 336, 11 S. W. 736; Schluerty v. Railroad, 96 Mo. 509, 10 S. W. 66; Eswin v. Railroad, 96 Mo. 290, 9 S. W. 577; Merz v. Railroad, 88 Mo. 672; Bowman v. Railroad, 85 Mo. 533; Karle v. Railroad, 55 Mo. 533. Speed ordinances are police regulations and they are binding upon railway companies, whether accepted or not. McAndrews v. Transit Co., 88 Mo. App. 97. (5) Plaintiff had the right to assume that the motorman would obey the law and would not operate a car at a dangerous rate of speed. Weller v. Railroad, 164 Mo. 199, 64 S. W. 141; Sullivan v. Railroad, 117 Mo. 222, 23 S. W. 149; Johnson v. Railroad, 77 Mo. 576; Petty v. Railroad, 18 Mo. 318. (b) Plaintiff had the right to assume that the motorman would have his car under control as was his duty to do, so as to avoid a collision with plaintiff. Richards v. Railroad, 49 S. W. Rep. (Ky.) 419; Cooper v. Railroad, 8 Am. Neg. Rep. 454; Ludley v. Railroad, 101 Mo. 58; O'Connor v. Railroad, 96 Mo. 220.

NORTONI, J.—1. The plaintiff instituted this action in the circuit court of the city of St. Louis, praying judgment against the defendant on account of personal injuries sustained by him by reason of alleged negligence of defendant in operating its street cars at an unlawful rate of speed, in violation of city ordinances. A change of venue was afterwards awarded plaintiff, the case was transferred to the Lincoln County Circuit Court and, at the October term, 1903, was tried by a jury in said court. The jury returned a verdict awarding plaintiff damages in the sum of $3,300. On this verdict judgment was properly entered, motions for new trial and in arrest were filed in

due time and afterwards overruled by the court. The case comes here for review by appeal.

There are nice questions involved in this record. In order to elucidate the matter we will set out the material portions of the pleadings and copious excerpts from the testimony.

The petition contains three specifications of negligence. First, the operating of the street car in violation of the fifteen-mile per hour ordinance; second, that the motorman, by the exercise of reasonable care and diligence, could have averted the injury; third, violation of the vigilant watch ordinance.

Omitting the formal parts, the petition is as follows:

"That on or about the twenty-ninth day of April, 1902, while plaintiff was walking upon said Utah street, at the intersection of said street and Jefferson avenue, and across defendant's railway tracks, said street and place being a public highway, where plaintiff had a perfect right to walk, the agents and servants of the defendant, managing its said cars, operated upon said track, carelessly and negligently operated the same at a speed of about twenty-five miles an hour, or upwards, in violation of the city ordinance, granting to said defendant the right to operate cars upon said street by electric power, which ordinance prohibits the operating of cars upon said streets at said place at a rate exceeding fifteen miles per hour, and that in consequence of the violation of said city ordinance by said defendant's agents and servants, in so operating said car at the rate of twenty-five miles per hour, or upward, and without fault on the part of plaintiff, said car was caused to strike and injure plaintiff as hereinafter stated; that the car that so struck plaintiff was in charge of a motorman in the employ of said defendant, and said motorman saw, or by the exercise of reasonable care might have seen plaintiff in imminent danger of being struck by said car, a sufficient length of time

before he was struck so that, by the exercise of reasonable care he might, and could have checked the speed of the car, and so have prevented it from striking and injuring plaintiff as hereinafter stated; but said motorman failed and neglected so to do, and the negligence of defendant's said motorman in this behalf contributed to the injuries of plaintiff herein complained of.

"That, by the terms of subdivision 4, sec. 1760, article 6, chapter 23, of the General Ordinance Provisions, of the city of St. Louis, in force for many years last past, and still in force it was provided:

'The conductor, motorman, gripman, driver, or any other person in charge of each car, shall keep a vigilant watch for all vehicles and persons on foot, and especially children, either on the track or moving towards it, and on the first appearance of danger to such persons or vehicle, the car shall be stopped in the shortest time and space possible.'

"That said defendant, in consideration of obtaining its franchise for operating electric street cars upon said Jefferson avenue, at said point, long before the injuries conplained of occurred, had agreed to keep, observe and be governed by said part of said ordinance above quoted, yet, in violation of said ordinance, and its said agreement, said defendant's motorman, in charge of and operating its car on the occasion in question, failed to keep a vigilant watch for persons on foot, moving towards the track, and failed, on the first appearance of danger to plaintiff, to stop the car in the shortest time and space possible; that, as a fact, said motorman might and could, with the appliances and equipage upon said car and at his command, by the exercise of vigilance have checked the speed or stopped said car, after it was apparent that plaintiff was in imminent danger of being injured, and thus have avoided the injury to plaintiff, yet said motorman failed and neglected so to do, and this negligence upon the part of the motorman contributed to the injuries in question to plaintiff.

"That in consequence of said several acts of negligence upon the part of the defendant, and its agents and servants in operating said motor car, it then and there was caused to strike plaintiff with great force and violence, knocking him down, breaking his left arm, breaking two of his ribs, and causing bruises and contusions on his body and head, injuring his back, causing a concussion and contusion of the brain, and injury to his nervous system, from which injuries he has suffered great bodily pain and mental anguish, and still suffers such bodily pain and mental anguish, and will continue to suffer such bodily pain and mental anguish for the rest of his life."

Omitting the formal parts, the answer was a general denial and a plea of contributory negligence, as follows:

"Comes now the defendant in the above entitled case and for answer to the petition of the plaintiff filed herein denies each and every allegation therein contained.

"And, for a further answer and defense, defendant says that plaintiff's alleged injuries were caused by his own negligence in going upon or so near a railroad track, on which a car was approaching, as to come in collision with said car at a time and place when and where plaintiff, by looking and listening, could have seen and heard the approaching car in time to have avoided collision with the same; but plaintiff, disregarding his duties in that respect, failed and omitted to look and listen for said approaching car, and by such neglect directly contributed to cause his said injuries. And having fully answered, defendant asked to be hence dismissed with its costs."

The injury for which recovery is sought befell plaintiff at the crossing of Utah street and Jefferson avenue, in the city of St. Louis. Jefferson avenue is a principal street in said city and runs north and south. According to the evidence it is fifty feet or more

in width from curb to curb. Near or about the center of this street are two street car tracks over which the defendant operates its electric cars. The east track is used by the north-bound cars, the west track by the south-bound cars. There is a slight incline on Jefferson avenue at this point from south to north; but this incline is very slight. Utah street runs east and west and is a thoroughfare of the city. The crossing for pedestrians is on the north side of Utah street and bears straight ahead from the sidewalk on the north side of the street. Utah street is not less than forty feet in width from curb to curb. Cars going north on Jefferson avenue traversing the east track are accustomed to stop at this crossing on the north side of Utah street to take on passengers. The city ordinances prohibit cars from running at a greater rate of speed than fifteen miles per hour at this point.

The plaintiff, Herman Deitring, testified that he resided on Indiana avenue, near the place of the accident; that he was seventy-three years old, had been ill for two years and three months with a sort of fever, was feeble, a little deaf, and while out for a walk, came along the sidewalk on the north side of Utah street; when about twelve or fifteen feet east of Jefferson avenue he noticed the approaching street car one block south at the crossing of Jefferson avenue and Cherokee street; that he walked slowly and leisurely along at about the rate of two miles an hour, carrying his cane, until within three feet of the east rail of the east track on Jefferson avenue where he looked and listened for an approaching car. He tells this part of the story in the following language:

"Q. How near were you to the railroad track when you stopped and looked? A. In about three feet.

"Q. Was there any car coming from the north? A. No, sir.

"Q. What hour in the day was it? A. Between nine and ten.

"Q. And you say you did see a car coming from the south? A. Yes, sir.

"Q. And when you stopped to look, three feet from the track, how far was that car south of you? A. Well, about one hundred and fifty feet, maybe not quite that much.

"Q. About one hundred and fifty feet; now, could you tell from where you stood looking the direction the car was coming right down the track, how fast it was coming? A. No, sir, I couldn't tell, the car running to me, how fast it was.

"Q. Facing a car coming toward you, you can't tell how fast it is coming? A. No, sir, but I supposed it wasn't going any faster than fifteen miles an hour, for I knew they had no right to run faster than that.

"Q. What did you do after stopping three feet from the track and looking and seeing the car coming; what did you next do? A. What did I do?

"Q. Yes. A. When I seen the car was that distance from me, I seen it and I commenced walking to get across the track.

"Q. About what gait did you walk? A. Well, like an old man; I couldn't walk very fast.

"Q. About how many miles would you walk an hour? A. Well, say about two miles an hour.

"Q. Do you know how wide the railroad track is? A. I suppose it is about five feet.

"Q. Across? A. Yes, sir; from rail to rail.

"Q. Now, after you started across the track did you become conscious that the car was coming down on you at a rapid speed before it struck you? A. Yes, sir, I was trying to do the best I could to get across.

"Q. You don't understand; I am asking you if before the car struck you, you knew the car was going fast, before it struck you? A. Yes, sir.

"Q. How quick before it struck you? A. Well, I couldn't just say how much I couldn't say just how much.

"Q. Where did it hit you? A. Hit me on my left side.

"Q. Now, after you started across the track you were three feet from the track when you started across? A. Yes, sir.

"Q. And you say you didn't know the speed the car was going when you started across?

"Objected to by Mr. Norton, leading.

"Q. Well, did you know how fast the car was going when you looked and saw it coming? A. No, sir.

"Q. And you started across the track? A. Yes, sir.

"Q. And you had eight feet to go to get across? A. Yes, sir.

"Objection.

"Q. You had three feet to the track? A. Outside the rail.

"Q. And five feet after you got on the track, and you walked at the rate of about two miles an hour? A. Yes, sir.

"Q. Where was you when the car struck your shoulder     A. I just had my foot on the last rail.

"Q. The last rail to get across? A. Yes, sir."

The injuries received by plaintiff were numerous, severe and permanent.

On the part of plaintiff, John Helm testified that he was forty-two years of age, resided in St. Louis where he was born and raised; he had known Jefferson avenue many years; on the morning plaintiff was injured (April 29, 1902) he was at the southeast corner of Jefferson avenue and Utah street facing north; he saw the plaintiff walking west on the north side and crossing the street, carrying a cane, before he saw or heard the car; he looked like he was out for a walk or airing; that he heard the car but did not see it until it was opposite him; then Deitring was in a pretty dangerous position between the tracks; the car was forty or fifty feet from Deit-

ring when he first saw it; that he watched it until it struck him that he had travelled to the Pacific coast two or three times and was familiar with railroads, had ridden on street cars daily all his life, was familiar with them and their usual rate of speed; the car which struck Deitring was running from twenty-five to thirty miles an hour when it struck him, making railroad time the way trains run over the country; that Deitring must have been nearly across the track when the car struck him; he was on the opposite side from him, the car being between them at the time of the collision; the car threw Deitring quite a distance, as much as twelve feet; he was the first one to him and found him in a bad condition, a mass of blood and dirt; that the car came near running a full block after it struck him before it stopped and backed; it was an exceptionally long block; that he did not notice them trying to stop the car, using sand or anything of that kind; his impression was they were running away from Deitring; he noticed no passengers on the car; he did not think it had been raining, noticed no mud, probably the streets had been sprinkled; he first noticed the car directly opposite him; that Deitring was then on the track going west; that when the bell or gong was rung he saw the old gentleman was "in for it;" that the old gentleman tried "to get a move on him," sort of made a spring but the car then obstructed his view; that the car was within fifty feet of the plaintiff when the gong was first rung; that he did not see it until then, at which time Deitring was between the rails near the west rail; that he heard a racket that put him in mind of a train coming at a tremendous rate; he heard the sound of wheels before he heard the gong or saw the car.

Louis Motts, on the part of the plaintiff, testified that he heard the noise of the car which attracted his attention; he saw Deitring walking, saw the car when it was about five feet from him, and after the car

passed saw Deitring lying about ten feet from the crossing; that the car was going about twenty-five miles an hour, at least; it ran two hundred feet after striking Deitring; Deitring was just about to make the last rail when he first saw him and just at that time the car struck him; that just as the car struck Deitring, he noticed the motorman try to stop the car, but just then it gave a report; he saw the motorman working around his brake but did not know what he was doing; that he was making an effort when the report came, was moving his hand around the brake; that he did not hear the gong ring before the collision at all.

To further sustain the issues on his part, plaintiff introduced in evidence, over the objection and exception of the defendant, certified copies of the ordinances pleaded in the petition and a deed from the Southern Electric Railroad Company to the United Railways Company and the lease from the United Railways Company to the defendant, showing that defendant had succeeded to the rights and obligations of the Southern Electric Railway Company.

At the conclusion of the plaintiff's evidence the defendant requested the court to give the following instruction:

"Admitting all the evidence offered in the case to be true, he is not entitled to recover in this action and your verdict must be for the defendant."

The court declined to give this instruction. Defendant saved an exception and asks us to review the court's action thereon.

2.    The first inquiry is, should this demurrer have been given? To arrive at a correct conclusion of this matter, it is important to ascertain, first, the rights, duties and obligations of the respective parties at the time and place of the collision. An examination in this behalf discloses the following: Neither party had superior rights over the other in the use of the thoroughfare. Plaintiff undoubtedly had the undisputed

right to cross defendant's tracks at the time and place mentioned in the petition. [Riska v. Union Depot Railroad Co., 180 Mo. 168, 79 S. W. 445; Jennings v. Railway, 112 Mo. 268, 20 S. W. 490; Hilz v. Railway, 101 Mo. 36, 13 S. W. 946; McPherson v. Railway, 97 Mo. 253, 10 S. W. 846; Bowen v. Railway, 95 Mo. l. c. 276, 8 S. W. 230.] And plaintiff had the additional right to presume, unless he knew to the contrary or by the exercise of ordinary care might have known, that defendant would not operate its street car at a rate of speed exceeding fifteen miles an hour. [Riska v. Railroad, supra; Weller v. Railway, 164 Mo. 180, 64 S. W. 141; Kellny v. Railway, 101 Mo. 67, 13 S. W. 806; Eswin v. Railway, 96 Mo. 290, 9 S. W. 577; Johnson v. Railway, 77 Mo. 546; Hutchinson v. Railway, 161 Mo. 246, 61 S. W. 635, 852; Petty v. Railroad, 179 Mo. 666.]

The defendant had the undisputed right to run its cars on its tracks at this point at a rate not exceeding fifteen miles per hour. It had no right to operate its cars at a rate of more than fifteen miles per hour. [Riska v. Railroad, and other authorities supra.] The operation of the car at a rate of speed exceeding fifteen miles per hour was negligence *per se.* [Murray v. St. Louis Transit Co., 108 Mo. App. 501; Hutchinson v. Railway, Weller v. Railroad, supra; Sepetowski v. Transit Co., 102 Mo. App. 110, 76 S. W. 693; Jackson v. Railway, 157 Mo. 621, 58 S. W. 32.] But while plaintiff had the right to use the thoroughfare, he was charged with the obligation of exercising due care and caution on his part and with the duty of looking and listening for approaching cars before crossing said tracks, in order to avoid probable collision and, if upon looking and listening he discovered an approaching car in such immediate proximity as to threaten his safety while running at a rate of fifteen miles per hour, he would be negligent and inexcusable in going upon defendant's tracks under those circumstances, or if he discovered an approaching car which he knew, or by the exercise

of ordinary care could have known, was running at a high and negligent rate of speed (in excess of fifteen miles per hour) so that it would appear dangerous to an ordinarily prudent person in the exercise of due care to attempt to cross the tracks, he would have been negligent and in excusable in going upon said track under those circumstances. [Murray v. Transit Co., 108 Mo. App. 501; Hutchinson v. Railway, supra; Riska v. Railroad, supra.] On the other hand if plaintiff's position (three feet from the rail) when he looked and listened, was such that when looking at the end of the approaching car he was unable to discern that the car was approaching at a rate of speed exceeding fifteen miles per hour, and if it was apparent that the car was then so far distant from him that an ordinarily prudent person of his age and condition, exercising due care, could cross the track in safety in front of a car running at a speed of fifteen miles per hour without imminent danger of injury, then plaintiff would be justified in relying upon defendant's agents to operate the car within the ordinance limit of fifteen miles per hour and in presuming that it was being so operated with due care and caution on their part, and cross the tracks. [Murray v. Transit Co., supra.] Then, too, the vigilant watch ordinance, in evidence, provides: "The motorman shall keep a vigilant watch for . . . persons on foot . . . either *on the track or moving toward it* and on the first appearance of danger . . . to such persons . . . the car should be stopped in the shortest time and space possible." It was clearly the duty of the motorman, after seeing plaintiff, an old man, walking slowly with a cane, either about to step upon the track, or on the track, or from the time the motorman by the exercise of ordinary care could have seen him, to have exerted every available effort and employed every available appliance to have avoided the injury. [Cooney v. Railway, 80 Mo. App. 226; Hutchinson v. Railway, 88 Mo. App. 376; Klockenbrink v. Railroad,

81 Mo. App. 351; Moore v. Transit Co., 95 Mo. App. 728, 75 S. W. 699; Gebhardt v. Transit Co., 97 Mo. App. 373, 71 S. W. 448; Riska v. Railroad, supra; Klockenbrink v. Railway, 172 Mo. 678, 72 S. W. 900.]

The last chance doctrine is thoroughly settled in this State. It is well defined by this court, speaking through BLAND, P. J. "It is a settled rule in this State, that though the plaintiff negligently placed himself in a perilous position by driving on or near the track, the motorman operating the car owed the plaintiff the duty of trying to avoid injuring him and plaintiff's previous negligence did not bar a recovery if the injury resulted from the negligence of the motorman in not stopping or checking the car." [Sepetowski v. Transit Co., 102 Mo. App. l. c. 119, 76 S. W. 693; Morgan v. Railway, 159 Mo. 262, 60 S. W. 195; Hutchinson v. Railway, 88 Mo. App. l. c. 383.]

The trial court, in passing upon the demurrer, should have placed the most favorable construction possible on plaintiff's theory of the evidence, allowing to plaintiff, as a presumption, every inference that could be reasonably deduced from the evidence in his behalf. "The court can decide the issue as a matter of law, when all the facts bearing on it are undisputed, and reasonable men could not differ in their inferences from the facts. But when the facts bearing on the issue are disputed, or when they are undisputed, but admit of different constructions and inferences, it must be left to the jury." [Berry v. Railway, 124 Mo. l. c. 244-245, 25 S. W. 229; Marshall v. Schricker, 63 Mo. 308; Mauerman v. Siemerts, 71 Mo. 101.] Under these rules, the trial court acted properly in overruling the demurrer.

This is clearly a case for the jury. Plaintiff had a right to cross the street. His only obligation was to look and listen for an approaching car and conduct himself with that degree of care and caution usually exercised by an ordinarily prudent man under like cir-

cumstances. Plaintiff discharged his obligation to look and listen when within three feet of the track he saw a street car about one-half block or one hundred and fifty feet south. Plaintiff was an old man somewhat deaf, had recently been sick, his physical condition weakened and his eyesight evidently no better than that of other men of his age and condition; his sense of discernment and discrimination necessarily poor. He knew the ordinance prohibited street cars running at a speed exceeding fifteen miles an hour. From his peculiar position (within three feet of the track, looking at the end of the car) it was impossible, no doubt, for him to discern that the car was running at a rate of speed in excess of fifteen miles per hour. If, in the exercise of due care it was impossible for him to so discern, plaintiff had a right to presume, which he did, that the motorman had his car well in hand; that the car was not advancing, and would not advance, faster than fifteen miles per hour, and that the motorman was then doing and would continue to do his duty by keeping a vigilant watch and would immediately check or stop the car as necessity required. [Riska v. Railroad, supra; Gratiot v. Railway, 116 Mo. 451, 21 S. W. 1094; Hutchinson v. Railway, supra; Weller v. Railway, supra.] No court can say, as a matter of law, that it was negligent for plaintiff to attempt to cross the track from within three feet of the rail to the farther side while a street car that is presumed to be running at fifteen miles per hour runs one-half block or one hundred and fifty feet. Then, too, the evidence on the part of plaintiff discloses that the motorman rang the gong only fifty feet before striking plaintiff, showing that he was not exercising that degree of care that he should have exercised toward protecting an old man, in plain view, walking with a cane. The witnesses say the car ran two hundred feet after colliding with plaintiff before it was stopped. Witness Mott says, in answer to Col. Norton's question on cross-examination, as to the motorman's first attempt to stop

the car: "Just at the time it hit Deitring, that is the time I noticed the motorman try to stop the car." The motorman is required to keep a constant and vigilant watch. It was his duty, in the exercise of ordinary care, to have seen plaintiff at the time plaintiff saw the car, one hundred and fifty feet south of the collision or soon thereafter. The motorman knew the car was running at an exceedingly high rate of speed. The plaintiff may or may not have known this; he said he could not discern it; whether he did or not was for the jury. The motorman being in charge of the car was in full possession of this fact. He knew he was approaching the street crossing where pedestrians were constantly passing over the tracks. The motorman, in the exercise of ordinary care, should have commenced then to check the speed and have his car under control and not wait until the collision, as testified to by Motts. It is evident that had the motorman commenced to check the speed of the car when he commenced sounding the gong, fifty feet south of the plaintiff, no doubt the injury could have been averted, not by stopping the car but by checking the speed, had the car been running at a speed of fifteen miles per hour. The evidence shows, not only from the bystanders, that the car was running like a railroad train across the country, twenty-five or thirty miles per hour, but from the one physical fact from which there is no possible escape which stands out boldly in this record, that is, that the car was running at such a rate of speed that, although the motorman turned his brake at the instant of the collision, the car could not be, and was not stopped until it had run two hundred feet beyond where the accident occurred. These facts and circumstances would certainly make a case for a jury.

Appellant contends that this case falls within the decision of the case of Guyer v. Railroad, 174 Mo. 344, 73 S. W. 584. We do not agree with this. In the Guyer case, first, there was no evidence that the engi-

neer was negligent; second, the plaintiff's husband was driving a team hitched to a heavy street roller, sitting on an improvised seat above the roller; attached to and being drawn behind the street roller was a heavy wagon. This load (roller and wagon) was being drawn up a considerable grade. The team was described as "just creeping." Behind these were other teams following in the procession and in this manner the deceased, wholly oblivious to his surroundings, drove on the railroad track immediately in front of the engine. There was no evidence that he looked and listened and it was plain that if he had looked and listened he would have seen the great danger in attempting to cross. The engineer, if he did see this procession of roller and wagon drawn by a team that was "just creeping," had the undoubted right to presume that a man exercising ordinary care under those circumstances would not drive on the track in front of the engine. In the Guyer case the deceased did not look and listen, but heedlessly drove on the tracks in the face of apparent danger. In the case at bar plaintiff did look and listen. He saw the car from his position and, exercising that degree of care an ordinarily prudent person would exercise under like circumstances, it is highly probable he could not discern that the car was coming at a dangerous rate of speed. Having seen the car and being unable to discern its rapid approach, plaintiff had the right to presume that it was running at a lawful rate of speed; and had it been running at a lawful rate of speed, no harm could have befallen him therefrom. This case falls within the rule announced by this Court in Murray v. Transit Co., 108 Mo. App. 501, 83 S. W. 995. Judge Goode therein says: "A man might easily misjudge the speed of a car or its distance from him after straining his senses to ascertain whether he could safely venture on the track; might make an honest mistake and under an erroneous impression concerning the car's speed or distance, go forward and be hurt.

Whether the plaintiff's misapprehension was induced by carelessness, or by a deception of the senses, or an error of judgment, was a matter for the jury. . . . The plaintiff swore he saw the car which hurt him but did not realize its speed and supposed he could cross the tracks before it could reach him. If this statement is true, is he to be charged with negligence as a matter of law or was the issue of his negligence one for the jury? We hold it was one for the jury, not feeling competent to say that by ordinary prudence the plaintiff was bound to observe the car was under a speed so high as to make it perilous to go on the track ahead of it when it was half a block distant.'' [Murray v. Transit Co., 108 Mo. App. 501, 83 S. W. 995-997; Murray v. Transit Co., 176 Mo. 183, 75 S. W. 611.] There are risks which the most prudent man may take and plaintiff is not to be barred from recovery if he adopted a course which the most prudent man would have taken under the circumstances. [Kellny v. Railroad, 101 Mo. 67, 13 S. W. 806; Kelley v. Railroad, 70 Mo. 604; Smith v. Railroad, 61 Mo. 588; Meyer v. Railroad, 40 Mo. 151.]

Counsel for the appellant have directed our attention to the case of Reno v. Railroad, 180 Mo. 469, and insist that it is controlling here against plaintiff. That case is not in point. The plaintiff in the Reno case testified that she looked and listened for a car but saw none and it was admitted that had she looked she could have seen a car two blocks away. It was a plain open view and seeing no car she went on the track and was injured. The Supreme Court says: ''From the testimony of plaintiff, and that given in her behalf, one of two inferences must be drawn, either that plaintiff saw the car and attempted to pass in front of it, or that she did not look for the car's approach and attempted to cross over the tracks in disregard of it, and in either case, she was guilty of negligence which at least con-

tributed to her injury and this, too, notwithstanding her positive declaration that she looked up Wash street to ascertain if a car was approaching from that direction and saw none. . . . Plaintiff's statement that she looked west and saw no approaching car, when to have looked, was to have seen the car, must be disregarded as a fact offered as an excuse for stepping upon defendant's track under the circumstances, and at the time and place she did.'' Judge ROBINSON says: ''Plaintiff was not run over by defendant's car, on account of a miscalculation as to its rate of speed on the occasion in question, but because she undertook to pass over defendant's track without calculation or caution.'' Whereas, plaintiff Deitring, in the case at bar, saw the car, and it was apparent that the car was then so far distant from him that there was no danger in attempting to cross the tracks if the car was running at a speed not exceeding fifteen miles per hour; and whether or not he could, by exercising such care as an ordinarily prudent man would exercise under like circumstances, discern from the position then occupied by him, that the car was running at such a dangerous rate of speed as to render it unsafe or dangerous for him to attempt to cross the track, was a question for the jury, and we think the court did not err in so submitting it.

On behalf of the defendant C. H. Hicks, the motorman testified that he espied the plaintiff fifty feet before he reached Utah street; that when he came within thirty feet of Mr. Deitring he put on the brake and reversed, used the sand, and rang the gong at the same time; that when fifty feet away he noticed Deitring about eight feet from the rail; that he threw off the power and tightened the brake; that Deitring never stopped, that he did not see the car and was going with his head down; that he saw Deitring's intention was to cross the track and when he got within thirty feet of him he was then about three feet from the east rail;

that he applied the brake and reversed, used the sand and rang the bell at the same time; that by that time he had not quite reached the west rail; that his heel was just on the west rail when the west part of the car hit him. On cross-examination, he said all the appliances of the car were in good order; that he threw off the power, tightened the brake and gave three raps when fifty feet from Deitring; that the car ran one hundred and fifty feet after hitting plaintiff; that there was only one passenger, that the car was empty and very light; that under ordinary conditions a car can be stopped within one and one-half car lengths, a car length being thirty-eight feet; that a car going at the rate of twenty-five miles an hour requires three or four times as much power to stop it as one going eight or ten miles per hour; that a car going eight or ten miles an hour can be stopped within one and one-half car lengths; that when a car is going thirty or thirty-five miles an hour in spite of all that can be done, it will run one hundred and fifty feet before it can be stopped; that he put forth every effort to stop the car in this instance.

The conductor, Thomas Carns, testified that upon crossing Cherokee street he gave the motorman two bells to go; that as the car got to Utah street, on the near crossing, the car was going north; that then the car was reversing as he could tell, being a conductor, that he was jerked back a little and was then facing the west; that he was looking northwest and just caught Mr. Deitring as he was struck; that he saw the body of the car strike him; that he was turned around a little but did not fall but staggered about eight or ten feet on the west track and sat down; that it is possible, ordinarily, to stop a car in an emergency in at least two car lengths.

At the conclusion of all the evidence the defendant asked the court to peremptorily instruct the jury that upon the whole case the finding must be for the de-

fendant. This instruction the court properly declined to give. Exceptions were saved and this ruling is assigned as error here.

The court submitted to the jury, under proper instructions, the question of negligence assigned in the petition against defendant and the contributory negligence of plaintiff alleged in the answer. The different theories were presented in clear and well worded instructions. Appellant does not criticize any of the instructions given on the part of the plaintiff save two, and complains of the refusal of the court to give two only of defendant's instructions as asked, and to the giving of the same in their modified form. Other than these, no objection is made to instructions given or refused on either side. These objections will be considered in their order. The court instructed the jury, among other things, "that even if it believed from the evidence that plaintiff negligently placed himself in a dangerous situation, yet if the defendant's motorman operating its car saw or by the exercise of reasonable care might have seen plaintiff upon the street and in the act of passing over defendant's track and in a dangerous situation in time to have avoided injuring him by the exercise of ordinary care but that he negligently failed to do so, then its verdict should be for the plaintiff." This was a proper declaration of the last chance or humanitarian rule. The jury found a verdict for plaintiff. The evidence introduced on the part of the defendant tended to show that the defendant's motorman was negligent. The motorman said he could stop a car running at a speed of eight or ten miles an hour in one and one-half car lengths. The conductor said in two car lengths. The motorman said that all the appliances on this car were in good order. It was very light, only one passenger aboard, and the motorman testified he used every endeavor to stop the car, yet it ran one hundred and fifty feet after the collision before it was possible to stop it. He also testified that it would require

a space of one hundred and fifty feet to stop a car run-
ning at twenty-five or thirty miles per hour. The mo-
torman admits having seen the plaintiff fifty feet before
the collision, but he did not apply the brake until within
thirty feet. The way was clear and the motorman could
have seen plaintiff and discerned that he was an old
man walking slowly with a cane at least one hundred
and fifty feet away, if not the whole block, prior to col-
liding with him, had he been keeping that vigilant watch
that was required. He should have had his car so in
hand that he could have stopped it in the usual time
and not required the thirty feet prior to colliding with
the plaintiff and the one hundred and fifty feet after-
wards to have brought it to a standstill. This is a case
of gross negligence on the part of the motorman and
the finding on the general issues was for the right
party.

Appellant contends that the court erred in refus-
ing the following two instructions asked by the defend-
ant and by giving the same in a modified form:

"1. Although you may believe from the evidence
that the car was being operated at a speed exceeding
fifteen miles per hour, and that the defendant's agents
in charge of said car failed to observe that the plaintiff
was in danger of being struck by the car, still, if you
further believe from the evidence that the plaintiff, by
looking and listening, could have seen or heard the ap-
proaching car in time to have stopped before going on
the track over which it was running, and thereby have
avoided the injury, then your verdict must be for the
defendant.

"2. Even if you do find from the evidence that
the motorman in charge of the car saw the plaintiff was
going upon the track in front of the car and could,
by the exercise of care on his part, have stopped the
car before reaching plaintiff, yet, if you further
find from the evidence that after said motorman
knew plaintiff was going on the track the plaintiff

knew, or, by looking or listening for the approaching car, could have known of its approach, and that it was not likely to stop before reaching him and that he could then have desisted from stepping on the track in front of said car and thereby have avoided the injury, then your verdict must be for the defendant.''

The court acted rightly in refusing the two instructions above set out. The purport of each of these instructions was to tell the jury that although the motorman saw plaintiff either going upon or upon the track in time for him to have checked the speed of the car and averted the injury, and even though the car was running at a negligent rate of speed, the plaintiff could not recover if they found he had not looked and listened for a car. This is not the law of this State. These instructions, as asked, conflict with the law as laid down in other instructions given on the part of both plaintiff and defendant. They were clearly in conflict with the humanitarian or last chance doctrine which requires the defendant to use due care after seeing plaintiff in a dangerous situation even though plaintiff was a trespasser. The instructions as asked would have told the jury that if it found plaintiff had not looked and listened, he could not recover even though defendant's motorman wantonly and recklessly ran him down and inflicted the injuries complained of. The instructions ignore the uncontradicted testimony of plaintiff that he looked and listened within three feet of the track, saw the car but could not discern so as to appreciate its negligent rate of speed and went upon the track relying upon the car running at a lawful speed. The court very properly refused both. The court modified the two instructions as asked by adding to each ''and that plaintiff did not stop and look and listen before going on the track, then your verdict must be for defendant,'' and gave the same as modified. There is no rule of law requiring plaintiff ''to stop and look and listen.'' He is required to ''look and listen'' but not to ''stop.''

The jury found, however, that he not only looked and listened but he stopped also in order to make a thorough observation. The instructions as modified and given, when read in conjunction with the other instructions given at defendant's request, were more favorable to defendant than the case deserved and appellant was not prejudiced thereby These assignments are therefore overruled. There were fifteen instructions in all given on the part of defendant and every possible theory of the case was fairly placed before the jury with great liberality.

3. It is objected, too, on the part of appellant, that the ordinance introduced in evidence does not cover Jefferson avenue at the point where the injury to plaintiff occurred. Answering this, we will say that we have taken great pains to look carefully into the record on this matter and find that the deed of conveyance from the Southern Electric Railroad Company to the United Railways Company includes and conveys to the United Railways Company, among other street car tracks and franchises, those tracks and franchises "west of Arsenal street to Jefferson avenue from Arsenal street south on Jefferson avenue to Broad way." The crossing of Utah street and Jefferson avenue, where the accident occurred is two blocks south of Arsenal street on Jefferson avenue. By reference to the ordinance in evidence, it appears that the ordinance treated a large portion of the Southern Railway Company's lines then existing as theretofore existing and as theretofore assigned to the Southern Electric Railroad Company and purporting in its title "to be an ordinance enlarging the franchises of and authorizing the Southern Railway Company, its successors and assigns to extend its lines," etc. (providing for both north and south extensions) and "authorizing said company, its successors and assigns to operate its lines as then extended over the tracks of other street railways on said route by electricity and defining the condi-

tions thereof," and showing, among other things, the following language, "Whereas said Southern Railway Company has assigned all its franchises to its successor, the Southern Electric Railroad Company." It appears from this ordinance that while the Southern Railway Company is more frequently mentioned and while the purpose of the ordinance seems largely to be the enlarging of franchises theretofore granted to the Southern Railway Company, it recognized and treated of the prior sale of the rights and property of the Southern Railway Company to the Southern Electric Railroad Company and, in fact, makes the additional grants and imposes the obligations upon the successor of the prior company, to-wit, the Southern Electric Railroad Company and its successors and assigns, and proceeds to enact "that the Southern Railway Company, its successors and assigns" (the Southern Electric Railroad Company and this defendant) are hereby authorized to operate and maintain its lines of railroad as by this ordinance enlarged, also by electric power," etc. Providing as follows: Section 6. . . . "Are hereby authorized and permitted to run its cars over and upon that portion of its line from Market street to Russell avenue at a speed not greater than ten miles per hour and between Russell avenue and Catalan street, and on Loughborough avenue and Gravois avenue at a speed not greater than fifteen miles per hour." The deed last above mentioned shows that the portion of defendant's lines formerly owned by the Southern Electric Railroad Company traversed Jefferson avenue from Arsenal street south to Broadway; that portion of said lines this ordinance sought to and did regulate. That the crossing of Utah street is two blocks south of Arsenal street on Jefferson avenue and within the limits above set out, no one can question. While the ordinance does not specifically mention Jefferson avenue, it does forbid running cars at a rate of speed greater than fifteen miles per hour upon that

portion of its lines "between Russell avenue and Catalan street," which is, in fact, on Jefferson avenue at the point named. From this record it is apparent, from reading the deed and the ordinance, that the ordinance covered that portion of defendant's lines on Jefferson avenue. Had there been merit in the appellant's contention, however, it could not be raised here for the first time. This objection was not urged against the introduction or consideration of the ordinance in the court below. The only objection urged against the ordinance in the court below is that it had not been accepted by the defendant. The objection and the ruling of the court is here set out in full:

"Mr. Norton: I object, if the court pleases, until it is shown that it was either a part of the original franchise, or that it was accepted by the defendant.

"Mr. Taylor: I propose to read the acceptance; I will first read the ordinance.

"Mr. Norton: Well, I object to it, if the court please; this shows an acceptance by the Southern Railway Company and not by this defendant.

"Mr. Taylor: I trace the line of title this way: The Southern Electric Railway obtained this right, and conveyed all its right and all its franchises to the United Railways Company, and the United Railways Company leased all its right to the Transit Company; and the Transit Company exercises its right by the franchise.

"Mr. Norton: In order to keep the record straight, I object to the ordinance and the acceptance of the Southern Electric Railway Company.

"The Court: The objection is overruled.

"To which ruling of the court, defendant then and there excepted and saved its exceptions.

"Mr. Taylor: This ordinance is duly certified to by the City Register, and under the Statutes of this State is admissible in evidence. I am offering the ordinance with its certification, and a certified copy of the

acceptance of this ordinance by the Southern Electric Railway Company.

"Mr. Norton: We object to that, if the court please, for the reason stated; it is a different corporation from the one here, and no acceptance of the defendant."

The objection now made against this ordinance was not raised by appellant in the motion for new trial: it is an afterthought. Both plaintiff and defendant treated the ordinance as applying to defendant's cars at the point named. The case was tried upon that theory.

The defendant asked and the court gave the following instructions:

"The actionable negligence charged in plaintiff's amended petition is:

"1. That the defendant's agents in charge of the car carelessly and negligently operated the same at a speed of about twenty-five miles an hour or upwards, in violation of the city ordinance read in evidence, which the petition alleges defendant, in consideration of obtaining its franchise for operating electric street cars upon Jefferson avenue at the point of the alleged injury to plaintiff, had long before the alleged injury to plaintiff agreed to keep, observe and be governed by said part of said ordinance read in evidence.

"2. That the motorman in charge of said car saw, or by the exercise of reasonable care, might have seen plaintiff in imminent danger of being struck by said car a sufficient length of time before he was struck, so that by the exercise of reasonable care he might have and could have checked the speed of the car and prevented injury to the plaintiff; but the said motorman failed and neglected so to do and said motorman's negligence in that behalf contributed to the injuries of the plaintiff.

"Before the plaintiff can recover upon either of these alleged acts of negligence he must establish the

same by a preponderance of the evidence. It is not sufficient for the plaintiff to prove merely the fact that he was struck by the car, but he must prove by a preponderance of the evidence that his 'alleged injuries were solely caused by the acts of negligence herein set out, and unless the plaintiff has shown by a fair preponderance of all the evidence in the case that one or the other of the acts of negligence herein set out, or the two in combination, solely caused the plaintiff's injury, then your verdict must be for the defendant. It is not sufficient to entitle plaintiff to recover that one or both of said alleged acts of negligence contributed to some other cause not being the sole proximate cause of the injury.''

By these instructions given at defendant's request, the issues arising by virtue of this ordinance were submitted to the jury and defendant can not now be heard to complain of an alleged error which it invited the court to commit, ''the law being well settled that on appeal parties litigant may be confined to the cause they adopted on the trial.'' [Mitchell v. Railway, 97 Mo. App. l. c. 425, 76 S. W. 647; Hill v. Drug Co., 140 Mo. 433, 41 S. W. 909; Stewart v. Outhwaite, 141 Mo. 562, 44 S. W. 326; Pope v. Ramsey, 78 Mo. App. 157; Strother v. DeWitt, 98 Mo. App. 293, 71 S. W. 1129.]

Appellant objected on the trial to the introduction of the ordinance in evidence on the ground that it was only a copy and, under the statute, it must be certified by the city register and not by his deputy. Upon an examination of the record, we find that this objection is based upon a mistake of fact upon the part of appellant's counsel. The copy of the ordinance introduced is properly certified by P. R. Fitzgibbon, register of the city of St. Louis, under his hand and the common seal of said city. There is no merit in this objection. A certified copy of the record in the office of the city register of St. Louis showing the resolutions of the board of directors of the Southern Electric Railroad

Company accepting said ordinance was introduced at the trial. It was certified by T. H. Quinn, deputy register. This, no doubt, was confounded by appellant's counsel with the certified copy of the ordinance. This certified copy of the resolutions of acceptance was objected to by appellant. Under the rulings in this State, the ordinance introduced was not required to be accepted by the railroad company. The passage of an ordinance, such as that introduced in this case, was a proper exercise of the police power of the State, as delegated to the city and when, under the police power, a regulation so reasonable is provided in order to better protect the life and persons of the community from injury by those operating dangerous machinery and agencies in its midst, it certainly can no longer be regarded as necessary to ask those for whose conduct the regulation is provided to accept its provisions before it becomes the law. This question is settled in Missouri beyond peradventure. [Riska v. Railroad, supra; McAndrew v. Railway, 88 Mo. App. 97; Sepetowski v. Transit Co., supra; Jackson v. Railway, 157 Mo. 621, 58 S. W. 32; Gebhardt v. Transit Co., 97 Mo. App. 373, 71 S. W. 448.]

Plaintiff introduced a deed of conveyance from the Southern Electric Railroad Company to the United Railways Company and a lease from the United Railways Company to the defendant St. Louis Transit Company, all of which conveyed the tracks, cars, appurtenances and franchises formerly owned and exercised by the Southern Railway Company and its grantee, the Southern Electric Railroad Company at the point of the injury to the United Railways Company and by it to the defendant. Plaintiff's counsel stated at the time, that he introduced the deed and lease for the purpose of "showing that the Southern Electric Railroad Company, which accepted that ordinance, conveyed all its interests in this and all its railways to the United Railways Company and by the lease that company conveyed

to defendant," and, of course, defendant having succeeded to its interests and rights, succeeded as well to its obligations not to run its cars at a prohibited rate of speed.

Appellant objected, and now objects, to these conveyances "because it had not been properly shown that the ordinance had been accepted." Under the view we take it was not necessary for the ordinance to have been accepted, hence there is no merit in this contention and it is overruled.

Appellant contends that there was error committed by the trial court in giving instructions numbers three and five on the part of the plaintiff over the objection and exception of appellant. These instructions are not incorporated in the abstract and for this reason we decline to review them.

There being no reversible error in the record, the judgment is affirmed. All concur.