MURRAY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, December 13, 1904.

1. STREET RAILWAYS: Collision at Crossing: Reckless Speed: Definite Evidence. In an action against a street railway company for injuries received by the plaintiff from collision with a car at crossing, where the negligent acts complained of, as causing the accident, were running the car at a reckless rate of speed and failing to stop as soon as possible on the first appearance of danger to plaintiff, the question of whether the speed was reckless was properly submitted to the jury, when there was evidence tending to show that the rate of speed was high, though there was no evidence as to how many miles per hour it was running.

2. ————: ————: Speed at Crossing. The question of whether a car is operated with careful or careless velocity when nearing a street crossing is often a question for the jury, regardless of any municipal ordinance regulating the speed.

3. ———: ———: **Contributory Negligence: Misjudging Distance.** The plaintiff was not necessarily guilty of contributory negligence because, in driving on the track, he misjudged the speed or the distance of the approaching car; it was a question for the jury whether his misapprehension was induced by carelessness or by a deception of the senses or by an error of judgment.

4. ———: ———: **Proximate Cause.** The questions of whether the plaintiff or the motorman or both failed to use ordinary care to avert the accident, or whose failure caused or contributed to it, were all for the jury.

5. ———: ———: **Contributory Negligence.** To defeat the plaintiff on the ground of contributory negligence in driving upon the track so close to the car as to render it impossible for the motorman to avert the collision, it was necessary for the jury to find, either that the speed of the car was not excessive, or else that he drove on the track so suddenly that the motorman could not save him, and did so negligently, without looking or listening when he knew there was danger.

6. ———: ———: ———. Although plaintiff drove upon the track when the car could not be stopped before reaching him, he could not be nonsuited upon that fact alone, regardless of whether he looked for a car, or disregarded one which he realized might hit him, and regardless of whether the car speed was excessive or proper.

7. ———: ———: **Last Chance.** Although plaintiff drove upon the track without looking or listening, if the motorman was negligent in his watch or in checking the car at seeing plaintiff's danger, when, if he had been diligent, he could have avoided the collision, the plaintiff was entitled to a verdict notwithstanding his negligence.

8. ———: ———: ———. In order that plaintiff might avail himself of the last chance doctrine, it was not necessary that he should be actually on the track when the motorman began to put his car under control; it was the duty of the motorman to control his car and avert the danger when it was apparent that the plaintiff was going towards the track and going into a position of peril.

9. ———: ———: **Reckless Speed: Failing to Stop.** Where the evidence tended to show the car was one hundred and fifty feet away when the plaintiff, thinking he had time to cross, drove upon the track, and the view was unobstructed, it was proper to submit to the jury the question of whether the motorman could have stopped the car in time to avoid the collision as well as the question of excessive speed.

Appeal from St. Louis City Circuit Court.—*Hon. M. N. Sale,* Judge.

AFFIRMED.

Boyle, Priest & Lehmann, Geo. W. Easley and Edward T. Miller for appellant.

GOODE, J.—This plaintiff was hurt by the collision of a trolley car of the defendant company with a United States mail wagon in which he was riding. The accident occurred in the afternoon of November 16, 1900, at the intersection of Montgomery and Ninth streets in the city of St. Louis. The plaintiff, whose business it was to take up mail from mail boxes on the streets of the city, was riding in a one-horse wagon, in prosecution of his duty, on the date named. About half past two in the afternoon he approached Ninth street, driving from the east westwardly along Montgomery street. There was a single street-car track on Ninth street and cars ran thereon only from the south to the north. When the plaintiff got to Ninth street, but before attempting to cross it, he looked south and saw the car that struck him, approaching the intersection of the two streets; but he says, a half block or more away. Supposing he had time to cross Ninth street before the car would reach Montgomery, he started across the former street; but the car struck the wagon, knocking it over with such violence that he was rendered unconscious. Plaintiff testified that he drove slantingly across the street for fear of breaking the wagon's springs and that he let his horse walk over the car track because he thought he had plenty of time. His view of the car was unobstructed. His explanation of the accident is that he misjudged the speed at which the car was running and that it came too swiftly for him to get over the track in safety. The negligence alleged is that the car was running at a reckless and

unlawful speed, that the motorman in charge of it saw the plaintiff crossing the track in ample time to avoid striking the wagon, but failed to do so, and omitted the ringing of his gong as he approached the crossing. The last charge of negligence was not relied on at the trial, as the plaintiff himself swore he saw the car before starting across the street and needed no warning of its proximity. The testimony for the defendant differs from the foregoing in attributing the accident to the plaintiff's coming suddenly into the motorman's view when the car was a short distance south of the mail wagon. The motorman's statement was that he had been running very slowly because a furniture van was traveling on the track in front of his car, that when this got out of the way near Montgomery street, he increased his speed, and just then the plaintiff appeared a few feet away and drove on the track. The Supreme Court held that this testimony permitted the inference that the plaintiff drove on the track without looking or listening for a car.

Plaintiff had a verdict and defendant appealed.

It is contended the court should have sustained the demurrer to the plaintiff's evidence, there being no testimony to show the speed of the car was unlawful, or that the motorman discovered the plaintiff in a position of peril in time to avoid striking the wagon. From the facts stated, it will be seen that two accounts of the accident were related. According to the plaintiff's version he actually saw the car when it was one hundred and fifty feet or more away, with no obstruction intervening, and drove slowly over the track in a northwesterly direction, supposing he had time to get over before the car would reach him. According to the defendant's version, a furniture wagon interfered with the view between the car and the mail wagon until about the instant of the collision; which resulted, therefore, not from undue speed or the motorman's inattention, or languid efforts to check the car on seeing

that an accident threatened, but from the motorman having no previous opportunity to see the wagon and having then no opportunity to avoid hitting it. It will be seen also that two breaches of the defendant's duty to use care for plaintiff's safety were relied on: running the car at a high and reckless speed and failing to stop it as soon as possible on the first appearance of danger to the plaintiff.

The first instruction given for the plaintiff dealt with the averment of reckless speed in the operation of the car as it approached the crossing. It told the jury, in substance, that if they found plaintiff was injured while crossing Ninth street in a careful manner, and after looking and listening for an approaching car before attempting to cross, and if they found the injury was due to the operation of defendant's car at a reckless speed, the verdict should be in his favor. The complaint preferred against that instruction is that evidence was lacking to justify the submission of the question of whether the car was operated at a reckless speed. No witness swore concerning the rate of speed in figures; that is, no witness undertook to say how many miles an hour the car was running; nor was it essential to make proof of that sort. This collision was at the intersection of streets and it often becomes a question for the jury, regardless of any municipal ordinance regulating the speed of cars, whether a car was operated at a careful or a careless velocity when it neared a street crossing. Holden v. Railway Co., 177 Mo. 456, 73 S. W. 973. The plaintiff testified that in driving about St. Louis for forty years he had crossed tracks thousands of times the same distance ahead of cars that he was in this instance and, therefore, thought he had time to get over in safety. There was other testimony which had a tendency to show the car was running at too high speed; and while the evidence on the point was not conclusive one way or the other, it was to be weighed by the jury on the issue

of reckless speed. In truth, this proposition was decided, at least impliedly, by the Supreme Court when the case was there on appeal; for the opinion of that court did not censure the submission of the speed issue to the jury. Murray v. Transit Co., 176 Mo. 184. Excessive speed may be the real and proximate cause of an accident, either by hurrying a car so swiftly toward a person who is crossing a railway track that he is overtaken before he can get across, which otherwise would not happen; or by making it impossible to stop soon enough to avert a collision, which could have been averted had the car's speed been less. And too high speed may have been connected with the collision in question in one or both those ways.

The second instruction given for the plaintiff advised the jury that although they found plaintiff saw the car approaching Montgomery street, but misjudged either its distance or its speed, and drove on the track when it was dangerous to do so, it was nevertheless the duty of the motorman to use all practicable means to check the speed of the car and avoid a collision after he had seen or by exercising ordinary care might have seen the danger of colliding with the wagon; and if they found the motorman was negligent in that regard, that his neglect was the direct cause of the collision, and that the plaintiff was exercising ordinary care at the time, plaintiff was entitled to a verdict. That instruction is criticized for leaving the question of whether the plaintiff was in the exercise of ordinary care open, if the jury found he misjudged the speed or the distance of the car. The argument is advanced that he could not have been in the exercise of ordinary care if he did either; as either was in itself a lack of ordinary care. This criticism is extreme. A man might easily misjudge the speed of a car or its distance from him, after straining his senses to ascertain whether he could safely venture on the track; might make an honest mistake and under an erroneous impression con-

cerning the car's speed or distance, go forward and be hurt. Whether plaintiff's misapprehension was induced by carelessness or by a deception of the senses, or an error of judgment, was a matter for the jury. The instruction is further criticized along this line of argument: if the plaintiff could be acquitted of negligence, though he made a mistake about the speed or distance of the car, the motorman could as well be acquitted of negligence in thinking the wagon would cross the track before he got to it, and, on that supposition, refraining from stopping. The questions of whether the plaintiff or the motorman, or both, failed to use ordinary care to avert the accident, and whose failure caused or contributed to it, were all for the jury. If they found the plaintiff negligently drove on the track and that said negligent act brought him into such close proximity to the car as to render it impossible for the motorman to avert a collision, plaintiff was guilty of contributory negligence which was the proximate cause of the accident and deprived him of the right to a verdict. But to defeat the plaintiff on this ground, it would be requisite for the jury to find, either that the car's speed was not excessive, or else that the plaintiff not only drove in front of the car so suddenly that the motorman could not save him; but that he did so negligently; that is, without looking or listening for a car, when he knew there was danger, considering the speed and proximity of the approaching car. Otherwise he was entitled to a verdict if the jury found the car was under a reckless speed, which proximately caused the accident; and the first instruction given for the plaintiff conformed to this view.

The position is taken and firmly maintained by the defendant's counsel that if the plaintiff drove on the track when the car could not be stopped before reaching him, he cannot recover, and that this is the law regardless of whether he looked for a car or disregarded one which he realized might hit him, and re-

gardless, too, of whether the car's speed was excessive or proper. We decline to accept such a proposition, for it would result in defeating the plaintiff if he was not negligent and the defendant was. If the car's speed was excessive and because of that fact it caught the plaintiff on the crossing, and he was guilty of no negligence in going on the crossing, he was entitled to a verdict. We are asked what difference it makes whether the plaintiff looked or not, if the car could not be stopped. It makes this difference: The legal duty was incumbent on him to look, and if he failed to perform it, the law says he was so far remiss that he will be denied relief. To our minds the only logical theory for the defendant to maintain in this connection is that the plaintiff was necessarily guilty of negligence if he drove on the track when the car was so close and under such speed that he was bound to be struck by it. But is this true? It is true if he saw the car and realized the speed was such that he could not cross the track before it would reach him, or, if by exercising ordinary prudence he would have known the peril. But in some situations it may be impossible for a person to see or hear a car, or, if he sees it, impossible or difficult to know its speed is great and excessive. The plaintiff swore he saw the car which hurt him, but did not realize its speed and supposed he could cross the track before it would reach him. If this statement is true, is he to be charged with negligence as a matter of law, or was the issue of his negligence for the jury? We hold it was for the jury, not feeling competent to say that by ordinary prudence the plaintiff was bound to observe the car was under a speed so high as to make it perilous to go on the track ahead of it, when it was half a block distant. We are cited to Moore v. Railroad, 176 Mo. 528, 75 S. W. 672, as opposed to our ruling. That decision was that it was negligence on the part of a plaintiff precluding a recovery if he stepped

on a railway track "directly in front of an approaching train and so close to it as to render it impossible to stop the train in time to avoid injury." The opinion says, "this is true even if the train is running at a rate of speed in excess of the maximum rate permitted by law." The person whose death was the cause of that action stepped in front of a car without looking or listening when the car was only five feet from her. That was not only a negligent omission of duty by the deceased, but was stepping "directly in front of a. car" and meant death or injury unless the motion of the car was very slow. Excessive speed could not have been the proximate cause of the fatality, as here it may have been. A court might pronounce it negligence to do such an act as appeared in the Moore case and hesitate to declare it was negligence beyond dispute to go on a track with a car half a block away. In the latter instance the question of negligence would turn on the car's speed and what the injured person knew, or ought, in prudence, to have known about it.

The other phase of the case may be thus stated: If the plaintiff drove on the track without looking or listening but the motorman was negligent in his watch, or in checking the car after seeing plaintiff's danger, when, if he had been diligent, he could have avoided the collision, the plaintiff was entitled to a verdict notwithstanding his negligence. The second instruction was according to this view; and the two instructions submitted the two theories on which the plaintiff might recover.

At the instance of the defendant the court gave instructions regarding the plaintiff's duty to look and listen for an approaching car before he went on the track, in obedience to the direction of the Supreme Court; which reversed the first judgment in this cause for the refusal of those instructions.

Three instructions, besides the one for a nonsuit, were requested by the defendant and refused. The

first was in effect that if plaintiff drove on the track so near the moving car as to prevent the motorman from stopping in time to avoid a collision, he could not recover. That instruction is faulty in this respect: it debarred plaintiff from recovering on the contingency stated, whether he was guilty of negligence in driving on the track or not. As said, he may have driven on the track too near the car for it to be stopped after he had used ordinary care to learn if it was dangerous to do so. He swore he looked and saw the car, but so far away that he thought he took no risk in trying to cross ahead of it. In that event, if the car was running at a reckless speed, he was entitled to a verdict; as we ruled above. The second of the refused instructions was that unless the plaintiff was in a position of peril long enough to enable those in charge of the car, by the use of the appliances at hand, and by taking such care as would occur to a person of ordinary prudence under the circumstances, to stop the car, plaintiff could not recover. Such is not the law. If the motorman saw the plaintiff before the latter was in a position of peril, but approaching the track in a manner which suggested that he was oblivious of the car's approach and, therefore, would go into a position of peril, it was the motorman's duty to put the car under control. The duty to control a car in order to avoid a collision, does not arise exclusively when a person is on the track; for his danger may be apparent while he is going toward the track. Aldrich v. Transit Co., 101 Mo. App. 77, 74 S. W. 141. The third of the refused instructions was that the plaintiff could only recover on the allegation of reckless speed. That charge was properly refused; for there was testimony which raised a question as to the motorman's diligence in trying to stop the car before it reached the plaintiff. The latter swore he saw the car one hundred and fifty feet south of the crossing with no object between it and him and, thinking he had time to cross, drove on the

track and diagonally over it in a walk. If such was the situation, the motorman had fair warning of the danger of a collision, for he not only saw the wagon one hundred and fifty feet away, and in time to check his car, but saw, too, in plaintiff's conduct as he drove slowly on the track, with his side or back turned to the south, that he (plaintiff) was unconscious of danger. In that emergency it behooved the motorman to take measures to avoid an accident.

The judgment is affirmed. All concur.