## FRANK, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, May 2, 1905.

1. **STREET RAILWAY: Collision at Crossing: Negligence: Sounding of Bell.** In an action against a street railway company for injuries received by plaintiff at a street crossing by reason of a collision of one of the defendant's cars with the wagon which plaintiff was driving across the tracks of defendant, the evidence showed that there were two parallel tracks and the plaintiff's attention was absorbed in watching an approaching car on the near track and that his progress was stopped and his course changed by an excavation so that he was struck by a car on the further track before he could clear it. *Held,* the

failure of the defendant's motorman to ring the bell on the colliding car, as it approached, was of no significance because the plaintiff could not have extricated himself from the perilous position if he had heard it.

2. ——: ——: **Vigilant Watch.** The failure of the motorman to keep a vigilant watch for persons about to cross the track, was of no significance where it was shown that he saw the plaintiff when 150 feet distant from him, and in time to have stopped his car.

3. ——: ——: **Excessive Speed: Last Chance.** Where the evidence showed in such case that after the collision the car ran fifty or sixty feet carrying the mule and fragments of the wagon with it and that by the force of the collision a passenger was knocked out of the car and onto the street, and some of the witnesses testified the speed was excessive, the question whether the motorman was negligent in running the car at a negligent rate of speed, and the question whether he could have stopped it after seeing the plaintiff's peril, in time to avoid the collision, were for the jury.

4. ——: ——: **Duty of Motorman.** The duty of a motorman in charge of a street car does not require him to put his car under control on seeing one near the track, unless the behavior of such person indicates that he is going to put himself in a position of danger.

5. ——: ——: **Instruction.** In an action against a street railway company for injuries received at a crossing, the defendant was entitled to an instruction clearly defining the duty of plaintiff and the effect of his contributory negligence and the duty of the motorman under the last chance rule, and an instruction which confused those principles, making them unintelligible to the jury, was error.

6. ——: ——: **Looking and Listening.** It is the duty of one about to approach a street car track to look and listen for approaching cars; but the failure to look and listen will not prevent a recovery for injuries received at a crossing, where the plaintiff, in approaching, had ample time to cross before the colliding car reached him, but was prevented from doing so by an obstruction which he did not discover until too late.

7. ——: ——: **Contributory Negligence: Limits of Last Chance Rule.** Where the plaintiff, in such case, was guilty of negligence which directly contributed to the accident, he could not recover on account of the negligence of the motorman, but only on account of the latter's wantonness, willfulness or recklessness, in failing to stop the car after plaintiff was in danger.

Appeal from St. Louis City Circuit Court.—*Hon. Robert M. Foster,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Glendy B. Arnold* for appellant.

(1)   The demurrer to the evidence should have been sustained.   Boyd v. Railroad, 105 Mo. 371, 16 S. W. 909; Holwerson v. Railroad, 157 Mo. 216, 57 S. W. 770; Grocer Co. v. Railway, 89 Mo. App. 534; Ries v. Railroad, 179 Mo. 1, 77 S. W. 734; Hook v. Railroad, 162 Mo. 569, 63 S. W. 360; Zumault v. Railroad, 175 Mo. 288, 74 S. W. 1015; Palmer v. Railroad, 112 Ind. 250; s. c., 14 N. E. 73, 74; Moore v. Railroad, 176 Mo. 528, 75 S. W. 672; Watson v. Railroad, 133 Mo. 246, 34 S. W. 573.
(2)   The burden is on the plaintiff to prove that defendant's servant failed to observe the provisions of the "Vigilant Watch" Ordinance.   His failure to do so can not be presumed from the mere fact of the collision. Murray v. Railroad, 101 Mo. 236, 13 S. W. 817; O'Malley v. Railroad, 113 Mo. 319, 20 S. W. 1079.

*Frank K. Ryan* and *E. P. Johnson* for respondent.

(1)   The demurrer to the evidence was properly overruled.   Meng v. Railway, 84 S. W. 213; Gruebel v. Railroad, 84 S. W. 170; Murray v. Transit Co., 83 S. W. 995; Story v. Transit Co., 83 S. W. 992; Kimble v. Railway, 82 S. W. 1096; Payne v. Railway, 105 Mo. App. 155, 79 S. W. 719; Murrell v. Railway, 105 Mo. App. 88, 79 S. W. 505; Nagele v. Transit Co., 104 Mo. App. 438, 79 S. W. 502; Buren v. Transit Co., 104 Mo. App. 224, 78 S. W. 680; Linder v. Transit Co., 103 Mo. App. 574, 77 S. W. 997; Jersey Farm Dairy Co. v. Transit Co., 103 Mo. App. 90, 77 S. W. 346; Riska v. Railway, 180 Mo. 168, 79 S. W. 445; Barrie v. Transit Co., 102 Mo. App. 87, 76 S. W. 706; Sepetowski v. Transit Co., 102 Mo. App. 110,

76 S. W. 693; Twelkemeyer v. Transit Co., 102 Mo. App. 190, 76 S. W. 682; Priesmeyer v. Transit Co., 102 Mo. App. 518, 77 S. W. 313; Grady v. Transit Co., 102 Mo. App. 212, 76 S. W. 673; Moritz v. Transit Co., 102 Mo. App. 657, 77 S. W. 477; Holden v. Mo. Ry. Co., 177 Mo. 456, 76 S. W. 973; Myers v. Transit Co., 99 Mo. App. 363, 73 S. W. 379. (2) Respondent was shown by the testimony, both for him and the appellant, to have exercised a very high degree of care, both before and at the time he drove on the tracks crossing Sullivan avenue, by looking for cars in both directions. The fact that he did not see the north-bound car did not constitute contributory negligence on his part, as his witnesses who saw it testified that it was at Dodier street when he drove on the tracks a distance of at least two hundred and fifty feet south of him, and Cook, the conductor of the south-bound car, testified for appellant that he supposed the car was then three hundred feet up at the time, and Bauer, the motorman of the north-bound car that collided with the wagon, testified for appellant that the latter car when he first observed respondent, was one hundred and fifty feet south of Sullivan avenue, to which add thirty feet to the center of Sullivan avenue, where respondent drove on the tracks, and twenty-five or thirty feet that he had driven north before the wagon was struck, make over two hundred feet, giving the motorman ample time in which to have stopped his car and avoided the injury if he had used ordinary skill and care. Meng v. Ry., 108 Mo. App. 553, 84 S. W. 213; Gruebel v. R. R., 108 Mo. App. 548, 84 S. W. 170; Story v. Transit Co., 108 Mo. App. 424, 83 S. W. 992; Kimble v. Railway, 108 Mo. App. 78, 82 S. W. 1096; Dairy Co. v. Transit Co., 103 Mo. App. 90, 77 S. W. 346. And appellant is liable if respondent had neither looked nor listened for a car. (3) But for the excavation on the east side of Jefferson avenue respondent had ample time in which to have crossed it without danger, even if he had seen the north-bound car when he started to cross it. He had a right to presume that the

motorman would obey the ordinances of the city and the law as to rate of speed and care required of him.

## STATEMENT.

The plaintiff was severely hurt by one of defendant's trolley cars, of the summer pattern.    The accident happened at the intersection of Jefferson and Sullivan avenues in the city of St. Louis, at 6:40 p. m., September 21, 1903.    Jefferson avenue is a north and south thoroughfare and Sullivan avenue an east and west one. The defendant's parallel tracks extend along Jefferson avenue. South-bound cars run on the west track and north-bound cars run on the east one.    At the time of the accident the east driveway of Jefferson avenue between defendant's east track and the curbstone was in the process of paving and excavated to the depth of eighteen inches. This excavation extended for a block north and south of Sullivan avenue, except a narrow strip across Jefferson avenue at the intersection with Sullivan, which had been left undisturbed so that vehicles could be driven over it. The excavating work was done by an independent contractor acting under a contract with the city of St. Louis. At the hour of the accident no red lights or other danger signàl had been set out to warn persons who approached the locality that travel was obstructed.    The dusk of evening was just coming on and likely warning lights would have been placed soon.    Jefferson avenue is sixty feet wide.    The next street north of and parallel with Sullivan is Herbert, distant about three hundred and fifteen feet. The defendant's south-bound cars turn into Jefferson avenue at Herbert street.    The next street south of and parallel with Sullivan is Dodier, distant two hundred and thirty-nine feet, and the next street parallel to that toward the south is University.    Plaintiff approached Jefferson avenue along Sullivan from the west driving to the east.    He swore that on entering Jefferson avenue he looked north and south but saw no car in either direction, though he could see southwardly

about three blocks.  He drove on the tracks intending to cross Jefferson avenue and continue his course east of it along Sullivan avenue; but when his mule got on the east car track, plaintiff discovered the excavation and that it obstructed his progress eastwardly along the line he was following and he would have to veer northwardly and drive over the strip left unexcavated—the miniature causeway, so to speak.  Just as he drove his mule on the east track he saw a south-bound car turning into Jefferson avenue around the curve of Herbert street.  That car advanced southward along Jefferson avenue on the west car track and threatened to collide with plaintiff's wagon, the rear of which stood on the west track.  Plaintiff swore it was impossible to turn around and thus extricate himself from his position, on account of the rapid approach of the car from the north; so he turned diagonally to the northeast, intending to cross the east car track on the portion of Jefferson avenue which had been left for a driveway.  In making this movement, but before he could get his wagon out of the west track, a north-bound car on the east track came along at high speed, struck the right front wheels of the wagon and the mule, inflicting the injuries for which the plaintiff asked damages.

Five acts of negligence are charged : that the motorman, in violation of an ordinance of the city of St. Louis, failed to keep vigilant watch ahead of his car for vehicles on the track or moving toward it; failed to stop his car in the shortest time and space possible at the first appearance of danger to the plaintiff; ran his car at a greater speed than ten miles an hour in violation of a city ordinance; ran past the south-bound car, at a point where passengers might alight, at a greater speed than three miles an hour in violation of a city ordinance, and gave no warning of the approach of his car by ringing the bell.

The answer pleaded in defense a general denial and that plaintiff's injuries were caused by his own careless-

ness in driving on the track in front of a moving car which was too near to be stopped before it reached him.

The testimony goes to show the north-bound car, which did the mischief, was running very fast. It passed fifty or sixty feet beyond the point of collision, dragging along the mule and fragments of the demolished wagon. The concussion of the car threw one passenger to his feet and hurled another from where he was sitting in the center of the car, entirely out of the car and on the track in front of it. The plaintiff was oblivious of the approach of the north-bound car to the instant of the collision, because his attention was completely engrossed by the south-bound one, which he was endeavoring to avoid by driving in a northeasterly direction across the east track. The motorman of the north-bound car testified that when he was one hundred and fifty feet south of Sullivan avenue he saw the plaintiff approach the track as if with the intention of crossing; that the plaintiff came into Jefferson avenue from Sullivan in a trot; that plaintiff leaned forward, apparently looking to the south, and stopped his mule; that he (the motorman) had put on the brake of the car in order to stop when he first noticed the plaintiff; but when plaintiff stopped, he released the brake and sent his car ahead, and when it got within fifty feet of Sullivan avenue the wagon moved forward again, plaintiff urging his mule into a trot, and going diagonally to the northeast; that the motorman then reversed the power, but before he could arrest the car it struck the front wheels of the wagon and threw the wagon around to the northwest and against the south-bound car. This witness testified that his car was running only from four to six miles an hour when the collision occurred, and had traveled from eight to ten miles an hour between Dodier street and Sullivan avenue. A witness for the plaintiff testified that he saw the north-bound car two blocks south at University street; that it came on under full speed and without ringing a bell, struck the wagon, carried the front of it and the mule

from fifty to sixty feet northward and knocked the plaintiff into a state of unconsciousness. That witness said the car approached at a speed of at least thirty miles an hour; that as the plaintiff approached the tracks he was driving in a walk.

The court gave this instruction of its own motion:

"A. You are instructed that if you believe from the evidence that on the 21st day of September, 1903, the defendant was engaged in operating a street car line along Jefferson avenue in the city of St. Louis, and that on said day the defendant negligently ran one of its cars against and upon a wagon being driven by the plaintiff, whereby the said wagon was broken and the plaintiff was thrown therefrom and injured, and that the defendant's negligence consisted either in failing to keep a vigilant watch for vehicles either upon the track or moving toward it, and in failing to stop said car in the shortest time and space possible in the circumstances and with the appliances at hand without injury to the persons upon said car, after the danger of collision with said wagon was apparent to the motorman in charge of said car, or might have been apparent to him had he been exercising ordinary care to discern vehicles upon or approaching the track; or that the defendant was negligently running its said car at a rate of speed exceeding ten miles an hour; or, that after seeing the plaintiff in a place of danger upon or near the track, the defendant gave no warning of the approach of its said car, and that the plaintiff's injuries were caused by the defendant's negligence in one or more of such particulars, and that the plaintiff was at the time exercising ordinary care for his own safety, then your verdict will be in favor of the plaintiff and against the defendant."

The following instructions were given at the instance of the plaintiff:

"B. The jury are further instructed that although they may believe from the evidence that at and prior to the time said car struck said wagon and injured plain-

tiff, that he was guilty of negligence' or carelessness in driving said wagon on the track in front of said car while it was moving, so that he was guilty of negligence while upon said track, yet if they further believe from the evidence, that the agents, servants or employees of defendant then running, conducting and managing said car, or either of them, saw said wagon and became aware of the danger of striking the same, either while it was approaching said track or while it was upon the same, or that by the exercise of ordinary care and skill the motorman of said car could have seen said wagon and thereby have become aware of the danger of striking the same in time to have slowed up or stopped said car with the appliances at hand and without danger of injury to the persons thereon, and thereby have avoided striking said wagon and injuring plaintiff, and they failed to do so, they were guilty of negligence for which defendant is liable, and the jury will find a verdict for plaintiff, notwithstanding such negligence on his part.

"C. The jury are further instructed that by the term 'ordinary care' as used in the instructions herein, is meant that degree of care which a person of ordinary care and prudence would use under the same or similar circumstances, and that failure to exercise such care is negligence."

The court gave this instruction of its own motion:

"D. The court instructs the jury that it is the duty of persons, on public streets, whether on foot or in vehicles, to be ordinarily prudent and careful in crossing street car tracks, and both to look and listen for approaching street cars, and even though the jury should find in this case that the gong of the car was not sounded, still if plaintiff could, by using ordinary care in approaching or driving upon the track and in looking for the approach of the car, have caused said wagon to be stopped in time to avert the collision, your verdict will be for the defendant; *provided that you find that he did fail to exercise such care, and that his failure to exer-*

*cise such care directly contributed to plaintiff's injury,
and that the defendant by the exercise of ordinary care
after plaintiff was, or by the exercise of ordinary care
might have been, discovered to be in a position of danger,
might have stopped the car by the use of the appliances
at hand and without danger to the persons on the car
and so have averted the injury, and that the defendant
failed so to do."*

The italicized part of the instruction was appended
by the court; the part in Roman letters having been re-
quested by the defendant and refused in that form.

The court gave this instruction of its own motion:

"E. If the jury find from the evidence that the
plaintiff could have seen the north-bound car approach-
ing upon the track in time to have stopped had he look-
ed in the direction of the car, or could have heard said
car approaching while he was approaching the track
in time to have stopped had he listened for said car, and
still went upon the track closely in front of said ap-
proaching car, then the presumption is, that he did not
look or listen; or, if he did look or listen, that he did
not heed what he saw or heard, so that in either case he
was negligent in going upon the track closely in front of
said car, if you believe from the evidence that he did so;
and if such negligence caused or contributed directly to
the collision and his alleged injuries, he cannot recover,
and your verdict must be for the defendant, *unless you
further find that the defendant might have stopped the
car and averted the injury, as stated in the second in-
struction.*" (Instruction B.)

The part of the instruction in Roman letters was
asked by the defendant, but refused as asked and given
with the italicized part, which was appended by the
court.

The court gave this instruction of its own motion:

"F. If from the evidence you believe that at any
time before plaintiff got upon the track with his mule
and wagon, the north-bound car could have been seen

from the place where plaintiff then was, then the court declares to you as a matter of law that it was plaintiff's duty to observe and heed the approach of said car, and if he failed to do so and such failure on his part directly contributed to the collision, he cannot recover in this action *unless you further find that the defendant might have stopped the car and averted the injury as stated in the second instruction.*"    (Instruction B.)

That instruction was asked by the defendant without the part in italics and refused in that form.

This instruction, among others, was requested by the defendant and refused:

"G.    Although the jury may find and believe from the evidence that defendant's motorman saw plaintiff as the vehicle in which he was riding approached defendant's track, still, if you further find from the evidence that the actions of plaintiff at or about said time were such as to indicate to the motorman who was at the time in the exercise of reasonable care and attention, that said vehicle would avoid going on or near the track and collision with his car, then the court instructs the jury that defendant's motorman had a right to continue the speed of his car until such time as, by his action or conduct, plaintiff gave some indication of a contrary intention; and if you find from the evidence that the motorman was at the time in the exercise of reasonable care and attention, and that he could not know that plaintiff was going upon or so near the track as to be struck by his car in time to avert an accident, then plaintiff cannot recover in this action and your verdict will be for defendant."

The jury returned a verdict for the plaintiff. Judgment was entered accordingly and after the requisite motions, the defendant appealed to this court.

GOODE, J. (after stating the facts).—We attach no importance to the failure of the motorman to ring the bell as his car drew near the plaintiff, granting that he

failed to ring it. The only purpose the warning could have served was to attract the attention of the plaintiff to the approach of the north-bound car and the need of moving far enough from the east track to be out of danger. But according to his own statement this movement was impossible. He was doing his best already to drive across the east track, and if he had gotten across, would have been out of danger from both cars. Sounding a bell might have sharpened the sense of peril he felt, but could not have stimulated his efforts to escape from the position he was in. If it had been possible to turn around and go in any other direction and thus get out of the way of the north-bound car, warning signals might have been useful; but he swore he could not turn around for lack of space between the south-bound car, which was close on him, and the excavation. He could neither turn around nor cross the street straight ahead, and had no chance to do anything except what he was striving to do —that is, drive to the northeast. Therefore, negligence in not ringing the bell may be regarded as of no importance as the case now appears.

It is conceivable that if his attention had been drawn to the north-bound car, plaintiff might have leaped from his wagon, and on that theory some weight might be attached to the failure to ring the bell. But such a theory is not advanced nor was it contended for at the trial. Indeed, if we accept the plaintiff's statement as to his engrossment in the effort to get his mule and vehicle out of the way, it is most unlikely that the thought of abandoning them would have occurred to him or been acted on if it had. As the case is presented on this appeal, not ringing the bell has no significance. Neither was the alleged failure of the motorman to keep a vigilant watch of consequence; for he testified that he saw the plaintiff one hundred and fifty feet or more away and in time to have stopped his car, had not plaintiff himself stopped and afterwards started forward again, thereby deceiving the motorman as to his (plaintiff's) intention in regard

to crossing the street. The negligence on the part of the motorman which may have been the responsible cause of the accident, was running at an excessive speed and not using the means at his command to stop the car after he saw there was danger of running against the plaintiff. One vital fact in the case is the distance the north-bound car was from the plaintiff's wagon when the motorman, in reason, ought to have known a collision was imminent, unless he checked his car. In other words, how far apart were the car and the wagon when the motorman first had reason to believe the plaintiff was imperiled by the movement of the car? And did he have reason so to believe in time to get control of his car by proper exertions? The motorman's own testimony shows he was alarmed at plaintiff's forward movement, and began to apply the brake, when the car was one hundred and fifty feet away; but he says plaintiff stopped and afterwards started again. The latter statement is contradicted by several witnesses who swore plaintiff never stopped until his mule was on the north-bound track and when the excavation just to the east prevented further advance. Several witnesses testified too, that at the moment plaintiff turned his wagon, which was then on the east track, diagonally to the northeast, the north-bound car was from one hundred and fifty to two hundred feet away. If the above statements of plaintiff's witnesses were true and the motorman's statement that he saw plaintiff one hundred and fifty feet away was true, it must have been apparent to the motorman that, unless checked, his car would run against the wagon. He must have seen that the wagon was caught in a trap between the south-bound car on its north side and the excavation right in front, could not get out and would be struck by his car if it proceeded northward. Now if the car was moving at a reasonable speed and was, as the witnesses said, one hundred and fifty or two hundred feet away when the wagon was on the east track, the inference is fair that by using the means at hand the motorman could have stop-

ped in time to avoid a collision. There is much evidence that the speed was very great. Some of the witnesses estimated it at sixty miles an hour. The violence of the collision, as shown by the consequences, demonstrates that the speed was high, if not reckless. As said, a passenger who was in the center of the car found himself after the collision lying on the track by the mule. The inference is fair that plaintiff had been caught in a perilous position without fault on his part. He knew nothing of the excavation on the east side of Jefferson avenue, and when he started across had plenty of time to get across before the car would reach him, if the street had been in order. He would have gotten across but for the fact that he was balked by the excavation. Meanwhile the south-bound car came along on the west track, crowded him closely and forced him to drive towards the northeast to get out of the way. While he was in this situation and his attention engrossed by his effort to escape the south-bound car, the north-bound one was approaching. It was the plain duty of the motorman on the latter car to do what he could to keep from running against the plaintiff. We therefore overrule the assignment of error based on the court's refusal to sustain a demurrer to the evidence for the plaintiff. The case was clearly one for the jury under proper instructions, submitting the issues of negligence on the part of the motorman and contributory negligence on the part of plaintiff.

There is a little testimony, chiefly that of the motorman of the north-bound car, that plaintiff himself was to blame for getting into peril; but if he was, it was the duty of the motorman to prevent the accident if possible. On this branch of the case no clear instruction was given to the jury. Instruction D, with the modification made by the court, is nearly unintelligible. It is not easy to discern how it could prejudice the defendant if understood according to its tenor. But certainly it was unlikely to impart to the jury a clear understanding of

the law regarding the duty of the defendant to try to avert harm to plaintiff if the latter carelessly had exposed himself to peril. The instruction reads like some of its words were used inadvertently, as suggested by plaintiff's counsel; who say, however, that it could not have been harmful to the defendant. But we think the defendant was entitled to a lucid instruction regarding its duty and responsibility in case plaintiff exposed himself to peril. None was given. The motorman swore he checked his car when he thought plaintiff was going to drive across ahead of it, and after he had checked it plaintiff's action induced the belief that he would await the passage of the car before attempting to cross; that plaintiff stopped his wagon after the brake had been set on the car and, thereupon, the motorman released the brake and the car started forward, when plaintiff drove in front of it too late for a collision to be averted. It is not incumbent on a motorman to get his car under control if he sees someone near the track whose actions indicate that he is not going on the track. He is only bound to put his car under control on the appearance of danger to a person on or near the track. If such person's behavior indicates that he is conscious of danger and regulating his movements with regard to it, the motorman may proceed with his car on the assumption that the person will not advance on the track. [Reno v. Railroad, 180 Mo. 469; Aldrich v. Transit Co., 101 Mo. App. 77.] Instruction D, as requested by defendant, stated the rule in terms of the present case and should have been given.

Besides the instruction we have copied, the defendant requested and the court refused one or two which told the jury that it was the plaintiff's duty to look and listen for an approaching car before attempting to cross the track, and if the jury believed that by doing so he might have seen or heard the car and avoided the accident, the verdict must be for the defendant. It has been declared by the Supreme Court and by this court follow-

ing its authority, that a person about to cross a street car track must look and listen for cars, and if he fails to take that precaution, when by so doing he could have prevented injury to himself, he should be denied a recovery. Murry v. Transit Co., 176 Mo. 183; s. c., 83 S. W. 995, 108 Mo. App. 501; Hartman v. Transit Co., 87 S. W. 86, 112 Mo. App. 439. Many of the facts of this case are so unlike those cases wherein that rule was enforced, that they do not compel the ruling that this plaintiff should be nonsuited if he failed to look and listen for the car which struck him. It is somewhat difficult to see why a person who goes on a street car track without looking and listening for cars, should be denied relief for an injury, if the street car operatives could have avoided injuring him by ordinary care, notwithstanding his negligence, any more than he should be denied relief when he failed to observe ordinary care in any other respect and the railway company's employees could have avoided injuring him. The specific precaution of looking and listening for a car is one exacted when men are about to go on car tracks; but we apprehend that omitting to do so will not, under all circumstances, exonerate the railway company from liability for an accident. The rule must yield to an exception when the circumstances show its application would work rank injustice. In other words, when the reason of it fails. It is applied when the injured party, because of his failure to look and listen for cars, went on the track and did not have time to get across before the car reached him. But in the present case the plaintiff proved he had ample time to get over the tracks before the north-bound car reached him, if his progress had not been obstructed unexpectedly by the excavation in the street. If he had seen the north-bound car it would not have deterred him from advancing, because he had no reason to think it would get to him before he got across the track. Why then should he be refused a recovery because he omitted an act, which, performed, would have had no influence on his

conduct?   We feel bound to overrule the exception to
the court's refusal to grant an instruction that plaintiff
could not recover if, by looking and listening for the
north-bound car, he could have discovered it in time to
avoid the accident.   Certainly he could have avoided the
accident if he had seen the car and stopped.   But it is
equally certain that he would not have stopped if he had
seen it; because he was acting under the well-founded be-
lief that there was no cause to stop, as he would be safely
over the tracks before the car got to the street crossing.

As the case is for negligence only, our opinion is
that the court should have omitted from its instructions
E and F, the clauses stating that the plaintiff could re-
cover although the jury might find his own negligent act
directly caused or contributed to his injury.   There have
been recent utterances by the Supreme Court against the
theory that a plaintiff can recover if his negligence
directly contributed to the accident, if the defendant was
neither reckless, wanton or willful. [Roenfeldt v. Rail-
road, 180 Mo. 554, 565.] We cannot assent to the propo-
sition that a party whose negligence causes injury can
recover from someone else, as instruction "E" said
plaintiffs might.   The instructions were complete with
out said clauses and misleading with them.   It was suf-
ficient to tell the jury that if the plaintiff moved on the
track, as the instructions assumed (that is, carelessly and
without looking and listening for a car) nevertheless he
might recover if the motorman could have stopped the
car and averted the casualty.   There is evidence in this
case tending to convict the motorman of reckless or
wanton misconduct, and we will not say there could be
no recovery if plaintiff's negligence directly contributed
to his injury.   There could not be if the motorman was
simply negligent, but might be if he was wanton or will-
ful.   But it served no useful purpose to require more of
the jury than a finding that plaintiff carelessly drove on
the track and that while he was there, the motorman

could have avoided running against him by using the means at his command.

The judgment is reversed and the cause remanded. All concur.