GEORGE E. GEBHARDT, Respondent, v. ST. LOUIS
TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, December 23, 1902.

1. **Street Railways:** ORDINANCE OF THE CITY OF ST. LOUIS:
NEGLIGENCE: ACTION: PERSONAL INJURY: ALLEGATION:
PROOF: PETITION: PRACTICE TRIAL. McQuillin's Ann. Mun.
Code of the city of St. Louis page 797, section 1760, providing that
the person in charge of a street car shall keep a vigilant watch for
all vehicles and persons on foot, and on the first appearance of
danger to such persons or vehicles, the car shall be stopped in the
shortest time and space possible, is a police regulation conferring
a right of action on a party injured in consequence of a violation of
it, without any allegation or proof that the ordinance has been ac-
cepted by the street car company.

2. **Constitution:** COURT OF APPEALS: SUPREME COURT: PRAC-
TICE, APPELLATE. The Constitution makes it the duty of the
Courts of Appeals of Missouri to follow the last controlling decision
of the Supreme Court.

3. **Ordinance of the City of St. Louis:** DUTY: EXTRAORDINARY
CARE. In the case at bar, the ordinance of the city of St. Louis
(McQuillin's Ann. Mun. Code, section 1760), does not create a
new duty, nor require the exercise of extraordinary care by the
motorman of a street car.

4. **Street Railways:** DUTY OF MOTORMAN ON STREET CAR:
CITY ORDINANCE, MEANING OF: HUMANITARIAN DOC-
TRINE, WHAT IT IS. In the case at bar, the ordinance of the
city of St. Louis (McQuillin's Ann. Mun. Code, section 1760) is
simply declaratory of the municipality's approval of what is com-
monly called "the humanitarian, or last-chance doctrine," to-wit,
that it is the duty of the motorman in charge of a running street
car to keep a vigilant watch ahead and when he sees, or by the
exercise of due diligence could have seen, the peril of the plaintiff in
time to have avoided injuring him, and fails to do so, the company
will be liable.

5. **Definition.** The meaning of the phrase "shortest time and space
possible" is uncertain, and the incorporation of this phrase in an

instruction, without explanation, in a personal injury action against a street railway, is misleading.

6. **Petition:** PRACTICE: COMMON LAW: PLEADING AND NEGLIGENCE; MISJOINDER OF CAUSES OF ACTION. A petition in an action for personal injuries which joined in the same count a cause of action for common-law negligence and one for negligence under the provisions of a city ordinance, such as in the case at bar, is not objectionable for misjoinder of causes of action.

7. **Contributory Negligence:** TESTIMONY: EVIDENCE. Where plaintiff, injured by a street car at a crossing, testified that he could not see the car on account of an obstruction, and that he did not hear it, it was proper to submit the issue of contributory negligence to the jury, though other witnesses, similarly or not so advantageously situated, testified that they saw the car one hundred and fifty feet away.

8. **Street Railways:** DUTY OF CONDUCTOR OF STREET CAR. The conductor of a street car is not required to keep a lookout to avoid accidents at street crossings.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough*, Judge,

AFFIRMED.

*Boyle, Priest & Lehmann, Geo. W. Easley* and *Walter H. Saunders* for appellant.

(1)    The motion to elect, filed by defendant at the threshold of plaintiff's case, should have been sustained, because the petition pleaded in one count three common-law acts of negligence, all of which are *ex delicto* and constitute one cause of action, and also attempted to plead a violation of the vigilant watch ordinance, which is *ex contractu*, because passed by the city under its contractual powers, and the observance thereof made a condition of the operation of the street railroad and, therefore, constituted another distinct cause of action.    5 Enc. Pl. and Pr., 303; Pomeroy's Remedies and Remedial rights, secs. 452-453 et seq; Bliss on Code Pleading (3 Ed.), sec. 1; 1 Estee on Pleading (4 Ed.), sec. 128.    (2)    The petition did not plead that defendant had accepted this ordinance, and it could not be

introduced in evidence without both pleading and proof of acceptance. (3) The petition in this case alleges that the violation of this ordinance "contributed to cause" plaintiff's injuries, which does not exclude the idea of plaintiff's contributory negligence, and, therefore, the ordinance is not in any event properly pleaded and should not have been introduced in evidence over defendant's objection. (4) The demurrer to the evidence should have been sustained. The plaintiff could have seen and heard the approaching car had he looked and listened, and could by ordinary care have avoided the injury. Watson v. Railroad, 133 Mo. 250. (5) Instruction No. 2 given for plaintiff declared in effect that is was a common-law duty of the motorman to keep a vigilant watch for plaintiff and stop the car in the shortest time and space possible under the circumstances. This is an incorrect exposition of the common law which exacts of the motorman only ordinary care toward people, or vehicles, on the street, which is a shifting standard, depending upon varying traffic conditions. Stanley v. Railroad, 114 Mo. 606.

*Chas. E. Hannauer* and *W. R. Schery* for respondent.

(1) The ordinance requiring the operator of a street car to keep a vigilant watch for vehicles and persons on foot, either on the track or moving towards it, and to stop promptly, is a mere regulation in respect to the running of the car, and a failure to perform the duties required does not create a cause of action, but furnishes evidence of negligence in operating the car. Senn v. Railway, 135 Mo. 517; King v. Railway, 98 Mo. 239; Jackson v. Railway, 157 Mo. 621. (2) No error was committed in overruling defendant's motion to elect. Plaintiff's petition stated but one cause of action. He was not confined to allege only one act of negligence, but could state as many as he thought he would be able to prove, whether common law or statutory, or both. (3) The "vigilant watch ordinance" is a police regu-

lation; a person injured because of the violation of the ordinance can recover in a suit for damages, whether such ordinance has been accepted by the railroad company or not. The violation of the ordinance is negligence *per se*. Jackson v. Railway, 157 Mo. 621, and cases cited; 1 Shearman & Red. Neg. (5 Ed.), sec. 13; Karle v. Railroad, 55 Mo. 476; Keim v. Union Ry. & Tr. Co., 90 Mo. 314; Weller v. Railway, 164 Mo. 180.

BLAND, P. J.—The petition charges that, "On July 27, 1900, while plaintiff was driving a horse and buggy west on Courtois street, in the city of St. Louis, across defendant's track on Michigan avenue, his buggy was struck and demolished by a car of the defendant, throwing him to the center of the defendant's track, dragging him more than fifty feet, and causing a fracture of one bone in the right arm, and other injuries."

The negligence charged is:

"1. That the employees of the defendant, in charge of the car, negligently and carelessly and unskillfully ran and operated said car at a highly improper, great and injurious rate of speed.

"2. That the mortorman, in charge of the car, failed to keep a vigilant watch ahead for the plaintiff, and failed to stop said car within the shortest time and space possible under the circumstances.

"3. That the defendant, by its agents, failed to ring the bell or give any warning of the approach of said car."

The petition then set out the ordinance commonly called the "vigilant watch" ordinance, and charged that the motorman of defendant's car violated its provisions, and that "the failure of defendant to keep the provisions of said article, as it was bound to do, directly contributed to cause the injuries to plaintiff herein complained of."

Defendant moved the court to compel plaintiff to elect upon which one of the causes of action stated in the petition he would stand, for the following reasons:

"1. Because the plaintiff has improperly united in the same count of his petition a cause of action founded upon common-law negligence with one arising upon what is commonly known as the 'vigilant watch' ordinance.

"2. Because the plaintiff has improperly united in the same count of his amended petition a cause of action arising *ex delicto* with another cause of action arising *ex contractu*.

"3. Because the plaintiff has improperly united a cause of action at common law with a cause of action based upon an ordinance."

The motion was denied.

The answer was a general denial and a plea of contributory negligence, alleging that plaintiff drove upon the track in front of a moving car without looking or listening for its approach, which he might have seen or heard, and that he negligently whipped up his horse and attempted to drive across in front of the approaching car when it was too close for him to safely do so.

The reply was a general denial.

The evidence is that plaintiff was driving west on Courtois street in a storm buggy with the curtains raised, in daylight, in the city of St. Louis, on the twenty-seventh day of July, 1900; that Courtois street crosses Michigan avenue running north and south. In Michigan avenue in a single railroad track. While attempting to cross Michigan avenue on Courtois street plaintiff's buggy was struck by defendant's electric street car running north and plaintiff was injured.

Plaintiff's evidence is that he listened before attempting to cross Michigan avenue but did not hear the approaching car; that he looked but could not see it for the reason that his view was obstructed by a wagon and that he did not see the car until it was upon him.

Other witnesses testified that they saw the car as it approached the crossing and that the motorman in charge had his head turned toward the inside of the car, seemingly engaged in conversation with some one in the car.

On the part of defendant the evidence tends to prove that had plaintiff listened he could have heard the car and had he looked he could have seen it; that the wagon he mentioned as obstructing his view did not obstruct it, and that he could have seen the car at least one hundred and fifty feet south of the crossing had he looked; that the car was running at a speed not exceeding six or seven miles per hour and that the bell was sounded one hundred and fifty feet from the crossing until it collided with plaintiff's buggy; that the motorman saw the plaintiff, when he was within twenty-two to twenty-three feet of the track, stop his horse and then suddenly whip it up and undertake to run around the car and make the crossing ahead of it; that as soon as he saw this move on the part of plaintiff he reversed the power, and another motorman who was on the platform with him, applied the brakes and that every effort was made by both to stop the car but it was so near onto plaintiff that it could not be stopped in time to prevent the injury.

Plaintiff recovered a judgment from which the defendant, after an unavailing motion for new trial, appealed.

On the motion to elect, and throughout the trial, the court treated what is commonly known as the vigilant watch ordinance as a police regulation. The correctness of this view of that ordinance is challenged by the appellant. Its contention is that the ordinance is contractual and that a street railroad company can not be held to the extraordinary care the ordinance requires of a motorman unless its acceptance of the ordinance is both pleaded and proved by the plaintiff.

The fourth subdivision of section 1760 (the ordinance in question) McQuillin's Annotated Municipal Code, page 797, reads as follows:

"The conductor, motorman, gripman, driver, or any other person in charge of each car, shall keep a vigilant watch for all vehicles and persons on foot, especially children, either on the track or moving toward it, and on the first appearance of danger to such persons

or vehicles, the car shall be stopped in the shortest time and space possible.''

In Fath v. Tower Grove & LaFayette R'y Co., 105 Mo. 537, it was held that the city of St. Louis had power to pass the ordinance, but that it was beyond its power, by legislation, to create a civil liability enforcible at common law, but that it might exact of a street railway company compliance with the ordinance as a condition for the privilege of laying its tracks in the streets of the city, and that a yielding by the street railway company to the exaction would create a contractual relation between the city and the company and a breach of this contract, whereby a private person was injured, would render the company liable to such person for the injury.

The doctrine announced in the Fath case has been approved in Senn v. The Southern Ry. Co., 108 Mo. 1. c. 152; Sanders v. Southern Electric Ry. Co., 147 Mo. 1. c. 425; Byington v. St. Louis R. R. Co., 147 Mo. 673.

In Holwerson v. St. L. & Suburban Ry. Co., 157 Mo. 256, it was held by MARSHALL, J., in division one, that the ordinance was penal, intended as a police regulation, and confers no right of action against the street railways upon the person injured by its cars and that a company violating the ordinance was subject only to the penalty prescribed by section 1772, article 6, McQuillin's Municipal Code. None of the other judges of the division concurred in this view of the ordinance.

In Jackson v. K. C., Ft. S. & M. Ry. Co., 157 Mo. 621, in an opinion by BURGESS, J., in division two, concurred in by GANTT, P. J., the doctrine of the Fath case is expressly disapproved, SHERWOOD, J., dissenting to so much of the opinion as disapproved of the doctrine of the Fath case. The ordinance under review in the Jackson case was one regulating the speed of trains on steam railways through a city of the fourth class. It was held that the city had power to pass the ordinance; that the ordinance was a police regulation, and injuries due to its violation were re-

coverable by the injured party. The vigilant watch ordinance was not before the court, but an ordinance of the same character, namely, an ordinance regulating the running of trains through a city was under consideration and the whole subject-matter was ably and exhaustively discussed by Judge BURGESS. The conclusion was reached, that ordinances of this class are police regulations, and injuries due to their violation were recoverable by the injured party and the doctrine of the Fath case was expressly disapproved.

Schmidt v. St. Louis Ry. Co., 163 Mo. 645, is cited by defendant as supporting the doctrine of the Fath case. It was held in that case that the objections to the introduction of the ordinance as evidence were not sufficiently specific to call the attention of the court to the point that the ordinance had not been accepted by the defendant company, but whether or not the defendant was bound by the ordinance, without having accepted it, was not decided or discussed and the case is not authority in support of the Fath case.

In Anderson v. Union Terminal Ry. Co., 161 Mo. l. c. 420, the cases of Sanders and Byington were approvingly cited, but the doctrine of the Fath case was not discussed.

The Constitution makes it our duty to follow the last controlling decision of the Supreme Court. We have not been cited to any decision of that court, nor have we found one, in which the doctrine of the Fath case was discussed, more recent than the Jackson case. We conclude, therefore, that the Jackson case is the most recent direct expression from the Supreme Court on the doctrine of the Fath case and hold that the ordinance in question is a police regulation and that an injury due to its violation affords the injured party a right of action. We are not persuaded that the ordinance creates a new duty or requires the exercise of extraordinary care by the motorman; on the contrary, it seems to us that the ordinance requires of him the exercise of only ordinary care, a care commensurate with the dangers constantly present with the running

of street cars in a populous city where the streets are thronged with pedestrians and crowded with all kinds of vehicles, continually passing on and crossing the street car tracks. To keep a vigilant watch for vehicles and persons on foot on the track, crossing the track or moving toward the track with the evident purpose of crossing it and to stop the car by a timely and reasonable endeavor to avoid a collision, is not requiring of the motorman any greater vigilance or exertion than a reasonable prudent and humane man would be expected to exercise in the same circumstances. Schmidt v. St. Louis Railroad Co., 149 Mo. l. c. 284; Schmidt v. St. Louis Ry. Co., 163 Mo. 645; Conrad Grocer Co. v. Railroad, 89 Mo. App. (St. L.) 391; Cobb v. St. L. & Han. Ry. Co., 149 Mo. 609; Keown v. St. L. R. R. Co., 141 Mo. 86; Quirk v. St. L. United Elevator Co., 126 Mo. 279; Fuchs v. St. Louis, 133 Mo. 168; Gutridge v. The Mo. Pac. Ry. Co., 105 Mo. 520; Bowen v. The C., B. & K. C. Ry. Co., 95 Mo. 268; Miller v. St. Louis R. R. Co., 5 Mo. App. l. c. 478.

Our understanding of the ordinance is, that as to individuals it is simply declamatory of the municipality's approval of what is commonly called "the humanitarian, or last chance doctrine," to-wit, that it is the duty of the motorman in charge of a running street car to keep a vigilant watch ahead, and when he sees, or by the exercise of due diligence could have seen, the peril of the plaintiff in time to have avoided injuring him, and fails to do so, the company will be liable, which is the law in this State. In this view of the ordinance it is preferable to plead the facts constituting this phase of negligence rather than the ordinance.

The language of the last clause of the fourth subdivision of the ordinance, to-wit, "to stop the car in the shortest time and space possible," is unfortunate. If taken literally it furnishes no guide to ascertain in what time and space a car may be ordinarily stopped. It is possible for a motorman of extraordinary strength to apply the brake of his car more effectually and to stop the car in a shorter time and space than can one of

ordinary strength. Which of these possibilities is to control? The possible time and space in which a Hercules could have stopped the car, or the possible time and space in which a man of ordinary strength could have done so? Comparisons of possibilities are impracticable in the trial of a lawsuit and can result only in uncertainty and confusion, and courts uniformly refuse to speculate on the mere possibility of human action, but confine themselves in their estimation of a man's conduct to the measurement of it by the conduct of ordinary men of the same class, in respect to the same subject-matter in the same or like circumstances. We think, therefore, that it is misleading to incorporate the ordinance bodily in an instruction to the jury, and that in its stead, when the pleadings and the evidence call for it, the approved form of an instruction declarative of the humanitarian doctrine should be given. For this reason instruction number one given for the plaintiff embodying the ordinance is disapproved.

2. It is contended by defendant that plaintiff can not join common-law and statutory negligence in the same count or cause of action. This contention is settled by the case of Senn v. Southern Ry. Co., 135 Mo. 1. c. 519, where it is said, in a like case, that "To state and prove his case, plaintiff was not confined to one negligent act. He had the right to state and prove either statutory or common-law negligence or both."

3. At the close of plaintiff's evidence defendant offered an instruction in the nature of a demurrer thereto. The refusal of the court to give this instruction is assigned as error. The contention of defendant is that the plaintiff could have seen and heard the approaching car had he looked and listened. This may be true as a fact, but the plaintiff testified that he could not see the car on account of an obstruction and that he did not hear it. It was for the jury, not the court, to pass on the credibility of this evidence, however improbable it may have seemed to defendant's counsel and notwithstanding the fact that other witnesses similarly situated, or not so advantageously situated as was the

plaintiff to see the car, testified that they saw it one hundred and fifty feet from the crossing where the collision took place.

4. The third instruction given for the plaintiff told the jury that it was the duty of both the motorman and conductor to keep a vigilant lookout, etc. This was palpable error. No such duty is required of the conductor. His duties are such as to call him to the rear platform and interior of the car and to give his attention to passengers on the car and to those alighting from and entering the car by way of the rear platform, and to give signals for starting and stopping the car. Holwerson v. Railroad, supra.

The judgment is reversed and the cause remanded. *Barclay* and *Goode, JJ.*, concur in the result, and the latter thinks the vigilant watch ordinance is held by the Supreme Court to require more than ordinary care.

### OPINION ON MOTION FOR REHEARING.

BLAND, P. J.—In his motion for rehearing plaintiff calls our attention to an instruction given in the case of the Conrad Grocer Co. v. Railroad, 89 Mo. App. (St. L.) 391, in which case the jury was told that it was the duty of the motorman and *conductor* to keep a vigilant watch, etc., and to the fact that the judgment in that case was affirmed whereas the judgment in the case at bar was reversed for error in giving a substantially identical instruction. The instruction in the Conrad Grocer Company case was not objected to on the ground that the jury was instructed that it was the duty of both the *motorman* and *conductor* to keep a vigilant watch, etc., and this feature of the instruction is nowhere mentioned in the opinion in that case and was evidently overlooked. The opinion in the case places the duty to keep a vigilant watch, etc., on the motorman alone. The case is, therefore, not authority for the notion that it is always the duty of both motorman and conductor to keep a vigilant watch, etc. Situations might be found when it would be the duty of both

the motorman and conductor to observe all the requirements of the ordinance, but they do not exist in the Conrad Grocer Company case nor are they to be found in this case.

The motion for rehearing is overruled. *Barclay* and *Goode, JJ.,* concur.