Submitted on briefs December 2, 1924, affirmed January 13, 1925.

# .W. J. WEST v. A. JALOFF.

(232 Pac. 642.)

**Municipal Corporations—Complaint Held to Sustain Verdict on Common-law Allegations of Negligence.**

1. , In action for injuries to pedestrian struck by defendant's automobile ambulance, complaint *held* sufficient to sustain a verdict for plaintiff on common-law allegations of negligence.

**Municipal Corporations — Complaint Held to Show Streets were Public Highways.**

2. Complaint in action for injuries to pedestrian struck by defendant's automobile ambulance *held* to show that streets mentioned were public highways within meaning of statute.

**Municipal Corporations—Statutes Held not to Furnish Immunity to Owner of Private Ambulance from Liability for Injuries, Where Driven at Unlawful Speed.**

3. Motor Vehicle Act, Section 1, subdivision 6, defining motor vehicles, and Section 2, subdivision 16, regulating their speed, *held* not to furnish immunity to owner of private ambulance from liability for injuries to plaintiff, where driven at an unlawful speed.

**Municipal Corporations—Private Ambulance Without Right to Exceed Statutory Speed Limit, Though Given Right of Way.**

4. Even though Motor Vehicle Act, Section 2, subdivisions 20, 21, giving certain vehicles right of way, includes private ambulances, this gives such an ambulance no right to exceed statutory speed limit for automobiles in general.

**Municipal Corporations—Excessive Speed of Private Ambulance Held for Jury.**

5. In action for injuries sustained by plaintiff when struck by a private ambulance, whether machine was being driven at an exceedingly high rate of speed *held* for jury.

1. See 20 R. C. L. 174.
2. See 13 R. C. L. 17.
3. See 13 R. C. L. 271.
4. See 13 R. C. L. 283.
5. See 13 R. C. L. 296.

**Negligence—Both or Either of Wrongdoers may be Sued.**

6. Where an injury is result of joint negligence of two parties, both or either of them may be sued.

**Municipal Corporations—Statute Held not to Take Away Common-law Liability for Negligent Injuries by Private Ambulance.**

7. Motor Vehicle Act, Section 2, subdivision 21, providing that ambulances among other vehicles shall have right of way, but that driver shall not be protected from consequences of arbitrary exercise of such right or for injuries willfully inflicted, *held* not to take away common-law liability of driver of private ambulance for ordinary negligence.

**Municipal Corporations—Evidence Held not to Show Emergency Justifying Excessive Speed of Private Ambulance.**

8. In action for injuries to pedestrian struck by private ambulance; evidence *held* not to show any such emergency as would justify using vehicle at a rate of speed greater than that prescribed for other automobiles.

**Municipal Corporations — Plaintiff Held Entitled to have Witness Detail Position of Colliding Vehicles.**

9. In action for injuries sustained by plaintiff when struck by private ambulance after its collision with a truck, plaintiff was entitled to have witness detail position of two machines with relation to each other and to street, where he could not well give a complete description without stating their relative position.

**Appeal and Error—Appellate Court Does not Weigh Conflicting Evidence.**

10. It is not the function of appellate court to weigh conflicting evidence; jury's finding thereon being conclusive so long as there is any substantial evidence to support it.

**Trial—Instruction Properly Refused as Assuming That Defendant's Driver was Engaged in Emergency Call and That He had Absolute Right of Way.**

11. In action for injuries sustained by plaintiff when struck by defendant's private ambulance, instruction *held* properly refused as assuming as matter of fact that defendant's driver was engaged in an emergency call, and that he had an absolute right of way.

**Trial—Directed Verdict Properly Refused, Where Facts Debatable.**

12. Request for directed verdict on ground that evidence clearly established certain facts, concerning which there was room for debate, was properly refused.

**Trial—Instruction That Certain Speed not Negligence Held Properly Refused.**

13. In action for injuries sustained by plaintiff when struck by defendant's private ambulance, instruction that it was not negli-

---

10. See 2 R. C. L. 204.
12. See 26 R. C. L. 1067.
13. See 14 R. C. L. 729.

gence on part of defendant's driver in driving ambulance on a wet
and slippery pavement at rate of speed he was going, *held* properly
refused as invading province of jury.

**Trial—Instruction Stating What Evidence Clearly Showed Held
     Properly Refused as Invading Province of Jury.**

14.  Instruction stating what evidence clearly showed, when in
fact evidence was not clear, but was in such condition that only
jury had a right to pass on it, was properly refused as invading
province of jury.

**Trial—Instructions, When Taken in Connection With Other Instruc-
     tions, Held to State Law Correctly.**

15.  In action for injuries sustained by plaintiff when struck by
defendant's private ambulance, instructions, when taken in connec-
tion with other instructions, *held* to state the law correctly.

**Appeal and Error—Instruction Relating to Ordinance Which was
     Void Held not Prejudicial.**

16.  In action for injuries, instruction stating allegations as to
ordinance with reference to use of street, and that street where
accident occurred was dangerous for speeding automobiles, *held* not
prejudicial, though ordinance was void, where evidence showed that
such street was usually congested with traffic and dangerous for
speeding automobiles.

---

See (1) 28 **Cyc.** 45. (2) 28 **Cyc.** 45. (3) 28 **Cyc.** 37. (4) 28
**Cyc.** 37. (5) 28 **Cyc.** 48. (6) 29 **Cyc.** 565. (7) 28 **Cyc.** 37. (8) 28
**Cyc.** 47. (9) 28 **Cyc.** 47. (10) 4 **C. J.** 853. (11) 38 **Cyc.** 1657.
(12) 38 **Cyc.** 1577. (13) 38 **Cyc.** 1651 (1926 Anno.). (14) 38 **Cyc.**
1651. (15) 38 **Cyc.** 1779.

From Clatsop: J. S. EAKIN, Judge.

In Banc.

This is an action brought to recover damages by
reason of an injury to the plaintiff arising from the
alleged negligent driving of an automobile, or am-
bulance, owned by the defendant.

The complaint set up an ordinance of the City of
Astoria professing to regulate traffic within the City
of Astoria, which ordinance, amongst other things,
defines certain streets and localities in that city as
a congested district, which district included the
locality in which the injury occurred. The ordinance

---

14.  See 14 **R. C. L.** 746.
15.  See 14 **R. C. L.** 817.

further required that vehicles and street-cars, including emergency vehicles, should be driven with great caution and that their speed should be reasonable, having regard for the traffic, the safety of the public and the use of the street. The rate of speed for emergency vehicles was fixed at not more than twenty-five miles an hour.

The complaint further set forth that there was a certain street, called Bond Street, improved and used for public travel, and one of the principal thoroughfares of the City of Astoria; that there was constructed and maintained on each side of Bond Street a sidewalk, substantially eight feet in width, elevated substantially six inches above the main street, which sidewalk was constructed for and used exclusively by pedestrians and not vehicular traffic, whilst the portion of said street throughout its length between such sidewalks was intended to be and was used for vehicular traffic, as well as for pedestrians; that at the same time there was a street called Eleventh Street in said city, which intersected and crossed Bond Street; that on each side of such street was a sidewalk eight feet in width and six inches above the surface of the main street; that the crossing of said Eleventh Street with said Bond Street, in the operation of automobiles, became and was at all times herein mentioned extremely dangerous, in that the main traffic, vehicular and pedestrian, there used and employed said two streets, and same were practically at all times congested, and, in addition thereto, large buildings were constructed at each corner and along each side of such streets throughout a distance of several blocks from each corner, so that the vision of each driver of every automobile along such streets, in either direction, was wholly obstructed until he had passed the first line of intersection, all of which

defendant had full notice and knowledge; that at the time plaintiff received the injury herein complained of there was erected and standing on Lot Four in Block Fifty-nine of McClure's Addition to Astoria (being the southwest corner of the intersection at which the accident occurred) a two-story frame building substantially fifty feet in width by seventy feet in length, the first or ground floor of said building being elevated substantially one foot above the sidewalk on each of said streets; that the first or ground floor of said building was at said time used as a public soft-drink parlor and cigar-store; that the main entrance to said first floor from said Bond and Eleventh Streets was through double doors, which had been placed therein after the northeast corner of such building had been cut out, leaving a triangular platform in front of the doors on the line of said streets and elevated about twelve inches above the same, with one step laid between the steps and the platform.

The complaint then alleges that during all the times therein mentioned the defendant was the sole owner of a motor vehicle, known and designated as an automobile, operated by a gasoline engine of great power and speed, which the defendant, at the time plaintiff received the injury complained of, used and employed for hire in said city; that said automobile was constructed originally as and for an ambulance, dead wagon or hearse, as the particular service might require, and was so used and employed by defendant for hire; that, as plaintiff is informed and believes and therefore avers the truth to be, such automobile was not being used or employed in emergency work at the time plaintiff was injured thereby, but, if so used, same was not driven with great or any caution at all, but recklessly and negligently and

at a speed in excess of thirty miles an hour; that on the thirtieth day of October, 1922, in broad daylight, and just as plaintiff had stepped from Bond Street on to the platform leading from such street into the first floor of the building on Lot Four, Block Fifty-nine, with intent to open one of the doors into said cigar-store, the defendant, by and through his servant, while engaged in his employment as such and in the line of his duty, so carelessly and negligently conducted himself that he carelessly, negligently and unlawfully drove said automobile over and across the sidewalk on Bond and Eleventh Streets, and over and against the plaintiff, striking plaintiff with great force and violence, knocking him against said building and pinning him between such building and the automobile, whereby defendant caused and produced the injuries complained of, which it is not necessary to enumerate in this statement. The complaint then alleges that immediately at and prior to the time defendant so carelessly and negligently drove the automobile upon and against plaintiff, defendant was and had been driving said automobile westward along Bond Street in the congested district of the City of Astoria, as defined and specified in Ordinance No. 4743 of said city, at a speed far in excess of thirty-five miles an hour, and that neither said automobile nor the driver thereof was engaged in emergency work as defined in said ordinance or otherwise; that said automobile was not driven with any caution whatever, but recklessly, carelessly and negligently and at an excessively high rate of speed and beyond the control of the driver, wherein and whereby the same was so driven over and against plaintiff and plaintiff received the injuries complained of. Then follows a statement of the plaintiff's illness from such injuries, of the expense incurred by him in being

treated therefor, an allegation as to the permanency of his injuries, and a prayer for $27,640 and costs.

The defendant filed a general denial, including every paragraph in the complaint except the first allegation, relating to the existence of an ordinance regulating the speed of vehicles in the City of Astoria.

There was a trial and verdict for the plaintiff in the sum of $9,600 and judgment thereon; from which judgment the defendant appeals.     AFFIRMED.

For appellant there was a brief over the names of *Mr. E. V. Littlefield* and *Messrs. Norblad & Hesse.*

For respondent there was a brief over the name of *Messrs. G. C. & A. C. Fulton.*

McBRIDE, C. J.—The pleadings are exceedingly lengthy, but the contentions between the parties may be succinctly stated as follows: First, the defendant contends that there is no city or state law regulating the speed of ambulances. Incidental to that is a peculiar condition of the pleadings in which plaintiff alleges that the vehicle which occasioned the injury was, among other things, an ambulance and was being so used at the time of the injury, which the defendant denies in general terms. Another contention which arises upon the pleadings is that plaintiff, having declared upon a city ordinance practically conceded to have been void, cannot recover upon the common-law allegations of negligence. Other alleged errors will be noticed further in the opinion.

1, 2. Conceding for the purpose of this opinion, without expressly deciding, that the ordinance is void, there is sufficient in the complaint to sustain a verdict upon the common-law allegations of negli-

gence: *Gebhardt* v. *St. Louis Transit Co.*, 97 Mo. App. 373 (71 S. W. 448); *Jarrett* v. *Apple,* 31 Kan. 693 (3 Pac. 571). Unless a vehicle of the character mentioned in the complaint is exempted by statute from such liability there is no exemption. There can be no question but that the streets mentioned are public highways within the meaning of our statute. Subdivision 6 of Section 1 of the Oregon Motor Vehicle Act, Chapter 371, General Laws of Oregon for 1921, is as follows:

"6. The term 'motor vehicle' shall mean every self-propelled vehicle moving over the highways of this state, excepting road rollers, farm tractors, traction engines, fire extinguishing engines and police ambulances; provided, that every motor vehicle equipped with more than four (4) wheels shall be declared to be a motor vehicle used in connection with a trailer or semi-trailer."

3. This section describes motor vehicles as "every self-propelled vehicle moving over the highways of this state, excepting road rollers, farm tractors, traction engines, fire-extinguishing engines and police ambulances." It will be noticed that this subdivision does not exclude from the term "motor vehicle" ambulances in general, but only police ambulances; so, if there is any privilege to private ambulances to run at greater speed than, or entitling them to the right of way over, other vehicles, it is not to be found in this section.

Subdivision 16 of Section 2 of the same act is as follows:

"16. Every person operating a motor vehicle on the public highways of this state shall drive the same in a careful and prudent manner, not to exceed thirty miles per hour, and within the limit of incorporated cities and towns not to exceed twenty miles per hour, and at intersections and schoolhouses not

to exceed twelve miles per hour, and in no case at a rate of speed that will endanger the property of another, or the life and limb of any person.''

So far as this section and the preceding one are concerned, it is very evident that the defendant cannot claim immunity as the owner of an emergency vehicle.

Subdivisions 20 and 21 of Section 2 of the act are as follows:

"20. No vehicle shall be operated with an excessive smoking exhaust upon any road, street or highway in this state. Gongs and siren whistles shall not be used on any vehicle other than ambulances, or vehicles operated by a police department, fire department, sheriff or other police officer, or upon any such vehicle except when moving in response to emergency calls.

"21. Patrol wagons, ambulances, fire patrols, fire engines and fire apparatus shall, in all cases, with due regard to the safety of the public, have right of way, all provisions of this act to the contrary notwithstanding; but this act shall not protect the driver of any such vehicle from consequences resulting from the arbitrary exercise of this right or for injuries willfully inflicted.''

4, 5. It is claimed that by reason of subdivision 21 above, this machine, being an ambulance, had the right of way. Plaintiff contends, however, that by the rule of *noscitur a sociis* the ambulances mentioned are those described in subdivision 6, *supra,* and that a private ambulance is subject to the same rules, as to right of way, as any other automobile. The court below, however, took the view that subdivision 21 included all ambulances, and instructed accordingly. But while subdivision 6 excludes police ambulances from the speed limitation, there is nothing in subdivision 21 that would allow a private ambulance to run upon a

public street of an incorporated town at any greater rate of speed than that authorized by statute. Granting the right of way to an ambulance is one thing, and granting the right to exceed the statutory speed is another. Whatever right of way defendant's machine may have had by virtue of its being an ambulance has no relation to the speed at which it was traveling, if such speed was above the statutory limit for automobiles in general, which at street intersections is twelve miles an hour; and in respect to the speed in this particular case there was abundant evidence to go to the jury that the speed was above the statutory limit. In fact, this might also be said to be a case where the doctrine of *res ipsa loquitur* in itself would indicate that the machine was being driven at an enormous rate of speed, or at least greatly in excess of twenty miles an hour. It was a machine weighing about 4,000 pounds. It collided with a truck and was shunted off its course, ran nearly across the street, climbed an elevation of about one foot, struck the plaintiff and pushed him through a door which he was endeavoring to open, and continued its course, with the man in front of it, until two thirds of the machine had passed through the front of the building and was inside of the cigar-store. This, of itself, was evidence to go to the jury of the fact that the machine was being driven at an exceedingly high rate of speed. There was also other evidence, although contradicted, that such was actually the case.

The jury had a right, we think, from the evidence, to infer that if the machine had been driven at a moderate rate of speed or within the statutory limit of speed for automobiles a collision with the truck would have been avoided, or at least the conse-

113 Or.—13

quences of the collision would not have produced the disastrous result shown to have been occasioned.

6. It is contended that, the defendant's vehicle having the right of way, the truck should have avoided the accident by timely giving way to the ambulance. But, conceding that the truck may have been negligent in this respect, the jury was perfectly justified, from the evidence, in finding that but for the added negligence of the defendant's driver the accident would not have occurred. Where an injury is the result of the joint negligence of two parties, both or either of them may be sued, and, at the very best, that appears to have been the case here, or, to speak more accurately, the jury would have been justified in so finding.

A number of cases are cited to the effect that drivers of emergency vehicles are not liable for injuries inflicted, on the ground that such emergency vehicles are acting in a governmental capacity; but none of these cases goes beyond the rule that such vehicles, in order to be exempt from liability, must be in the actual service of the city, either by reason of the city's ownership of the same or because the vehicle is being used under contract with the city; neither of which facts appears in this case.

7. It is contended that the clause in subdivision 21, *supra,* which, after prescribing that ambulances, among other vehicles mentioned, shall have the right of way under certain conditions, provides that "this act shall not protect the driver of any such vehicle from consequences resulting from the arbitrary exercise of this right or for injuries willfully inflicted," restricts defendant's liability to these causes, and, in effect, relieves him from liability for mere common-law negligence. This construction takes away from an injured person a good common-law remedy for a

private injury committed by a private citizen and gives him an emasculated remedy wholly inadequate under many conditions. Perhaps, if the section should be construed as referring to the criminal liability of the driver, it might be upheld. But ever since the cases of *Mattson* v. *Astoria,* 39 Or. 577 (65 Pac. 1066, 87 Am. St. Rep. 687, 6 Munic. Corp. Cas. 591), and *Batdorff* v. *Oregon City,* 53 Or. 402 (100 Pac. 937, 18 Ann. Cas. 287, 8 N. C. C. A, 142, note), it has been the settled law of this state that the common-law remedy for negligently inflicted injuries could not be taken away without providing some other efficient remedy in its place. The defendant is therefore liable for ordinary negligence here, if such negligence is the proximate cause of the injury. We say nothing here as to the application of this section to police ambulances and the like which are sometimes held to be acting in a governmental capacity, and concerning which, and for that reason, a different rule is possibly applicable.

8. Nor is there any testimony here of any such emergency as would justify using the vehicle at a rate of speed greater than that prescribed for other automobiles. A physician, Dr. Van Dusen, testified that he sent the defendant's driver to bring "a case," as he expressed it, that is, a sick woman, to the hospital; but there is nothing in the testimony to indicate that there was any emergency that required any greater speed than an ordinary automobile would be expected to use under the same circumstances, and no emergency is pleaded in the answer. In fact, the answer, construed technically, contains a denial that the automobile was an ambulance at all. But, holding the plaintiff to his pleading that it was, there is nothing in the pleadings to indicate that it was going upon any exceedingly urgent call.

9. An objection is raised to the admission of the testimony of one Dan Allen as to the position of the truck and the ambulance at the time of the collision, their relative speed, and as to whether the truck was in the intersection. But, clearly, the plaintiff was entitled to have the witness detail the position of the two machines with relation to each other and with relation to the street as a comprehensive part of the whole transaction as he saw it, and there was no error in admitting this testimony.

10. The sum and substance of the whole matter of Allen's testimony was that he saw the ambulance coming down the street at a rate which he estimated at thirty-five miles an hour, and that, the truck being within the intersection, the ambulance struck it, or it struck the ambulance, or there was a mutual collision between them, and that by reason' of this collision the ambulance skidded off its course and ran into the cigar-store. He could not well give a complete description without stating the relative position of the two machines at the time of the accident. As before stated, it is altogether possible from this testimony that the truck may have been so far to blame that a separate action against the owner of it would have accrued on account of this injury. But there is testimony which, if taken as true, would furnish the jury a basis for finding that, had the driver of defendant's automobile driven with ordinary caution and at a speed within the limits of the state law, the accident would not have occurred, and that he would have been able to have avoided a collision even if the driver of the truck was also negligent in not using timely caution to keep out of his way. It is not our function to weigh conflicting testimony. That was for the jury, and its

finding thereon is conclusive upon us so long as there is any substantial evidence to support it.

11. The defendant asked an instruction to the effect that the plaintiff's cause of action was for an injury occasioned in violation of Ordinance No. 4743 but that plaintiff was endeavoring to recover under the Motor Vehicle Act and therefore there was a fatal variance, and asked a directed verdict on this ground, which the court refused. As already shown, the plaintiff was entitled to recover at common law. The basis for such recovery was abundantly set out in the pleadings, and there was no variance which could possibly have misled the defendant.

The defendant also requested the following instruction:

"I instruct you as a matter of law that the vehicle which was driven by defendant was an ambulance, engaged in an emergency call at the time, and therefore an emergency vehicle which had the absolute right of way over any and all other vehicles on the streets of the city of Astoria. The evidence in this case clearly establishes the fact that defendant's said ambulance was giving due notice of its approach by loudly sounding a siren, and I instruct you, as a matter of law, that defendant's agent and servant, in driving said ambulance had a right to assume that other vehicles would heed his warning, would either stop or drive their respective vehicles to a place of safety where it could not collide with said ambulance and that such other vehicles would concede the right of way to the defendant."

This instruction assumed, as a matter of fact, that defendant's driver was engaged in an emergency call, and also assumed that he had the absolute right of way; whereas his right was not absolute, but subject to the dictates of common prudence and the apparent necessities of the case.

The third requested instruction was to the effect that, as a matter of law, the speed limitation imposed by the Oregon Motor Vehicle Act did not apply to an ambulance or other emergency vehicle while engaged in emergency work. This was coupled with a further proposition that the court instruct the jury that the injuries inflicted by defendant's driver must be shown to have been inflicted willfully or in an arbitrary exercise of his right to drive at a high rate of speed before plaintiff could recover. As already shown, neither of these propositions is tenable, and the instructions given by the court went quite as far as the law justified. The fourth requested instruction was to the same effect and was properly refused.

12. The fifth request was for a directed verdict upon the ground, as stated, that the evidence clearly established certain facts concerning which, in truth, there was room for debate, and would have been a clear invasion of the province of the jury had it been given.

13, 14. The sixth requested instruction was to the effect that it was not negligence upon the part of defendant's driver in driving the ambulance on a wet and slippery pavement at the rate of speed he was going. This also would have invaded the province of the jury, and was properly refused. The sixth request also required the court to invade the province of the jury by stating what the evidence clearly showed, when in fact the evidence was not clear, but was in such condition that only the jury had a right to pass upon it.

15. The defendant also excepted to the following instruction of the court:

"The law of the road in this state requires that any motor vehicle shall be run at a speed at no time

greater than is reasonable and proper, having regard to the safety of the public traffic and the use of the street, road or highway then being traveled; and in this case I instruct you that the streets and roads of the city are also highways in the state and are governed by the laws of the state, the same as the roads and highways throughout the country.

"The rate of speed on all streets, roads and highways in this state shall be a reasonable speed up to and not exceeding thirty miles an hour, but any speed in excess of thirty miles an hour upon any road or highway of this state shall be an unreasonable speed and is prohibited by this Act, and that applies to all vehicles that travel upon the highways of this state, except such as are termed emergency vehicles, which I will mention later. * * "

The defendant also excepted to the following instruction:

"It is also the law of the road in this state that a person approaching an intersection of two highways or streets, has the right of way as to all roads approaching the same intersection to his left, and it is, therefore, the duty of such other persons approaching such intersection to give way by either slowing up, or, if necessary, stopping until the person having the right of way is safely past, and any failure to observe this requirement of the law would be negligence."

This is an excerpt from the instructions given by the court, the whole of which, taken together, taught the jury that defendant's automobile had the right of way.

Defendant also, in effect, objected to the following instruction:

"The driver of an emergency vehicle, however, must use ordinary care and prudence in driving his vehicle, to avoid doing unnecessary damage to others who may be at the same time using the highways. He must keep his car under control and when reason-

ably possible avoid collision with other travelers on the highway.''

And also the following instructions:

''He would not have the right to run into or damage another, even though the other party had unlawfully or inadvertently interfered with the ambulance, but it would be the duty of the driver of the ambulance in that event to use such care and control as he reasonably could to avoid damage, such care as a reasonably careful and prudent man who might himself be liable would use under the same or similar circumstances. If he used such care in such occasion and still could not avoid collision or damage, then he would not be responsible therefor. * *

''But if you find from the evidence that the driver of the truck, before he had noticed that the ambulance was coming or demanding the right of way, had entered upon the intersection of the highway and was so situated that he would find it impossible to get out of the intersection before the ambulance approached him, or for any other reason was not able to give the right of way, then it would be the duty of the ambulance to use such precaution and care as was reasonably possible for him to use in order to avoid a collision, and if he did use such precaution and still the accident was caused without his fault, then he would not be liable or responsible for the accident; but if you find from the evidence that both the driver of the truck was negligent in passing or attempting to cross the intersection at that time and you also find that the driver of the ambulance was negligent in the manner in which he approached the truck, or was reckless or careless or incompetent in the handling of the car so that his negligence, together with that of the negligence of the driver of the truck, brought about the injury—the accident which caused the injury to the plaintiff, then you should find against the defendant, notwithstanding you find that the driver of the truck was also negligent in his acts.

"Where an injury of this character is caused by the negligence of two persons, each of them committing acts of negligence which proximate the injury, then each of them is liable for the injury.

"If, on the other hand, you find that the driver of the truck was not negligent in anything that he did in driving across the intersection, but that through the negligent act of the driver of the ambulance in not using prudence or care, or with a reckless indifference to the rights of others, he brought about the collision to his car in the pool hall which injured the plaintiff, then your verdict would also be for the plaintiff and against the defendant. * *

" * * But you have a right, in determining what amount you will allow him, to take into consideration the extent of his injuries, the permanency of them, the extent to which they are afterwards affected from the injury, and the extent to which, if he should recover from them, it will reduce his earning capacity. * * "

These instructions seem to us, when taken in connection with the other instructions given by the court, to state the law correctly.

16. Defendant also objected to the following instruction:

"The complaint alleges the ordinance of the City of Astoria with reference to the use of streets by vehicles, and alleges that Bond Street and Eleventh Street in the City of Astoria are public highways in the City of Astoria, and that the intersection of those streets is a busy thoroughfare in the city, congested with traffic and dangerous for speeding vehicles."

This instruction was evidently given in stating the issues as they appeared from the pleadings. It would have been just as well to have omitted it, in view of plaintiff's concession that the ordinance was void, concerning which we here express no opinion; but it is difficult to see how it could have worked any

injury to the defendant, as the evidence on all sides showed that the street, at the point where the accident occurred, was one of the highways of the city and usually more or less congested with traffic, and usually more or less dangerous as a locality for speeding automobiles.

We have carefully gone over the evidence in this case and the instructions of the court, which, taken as a whole, seem to us as favorable as the defendant had a right to require. We are satisfied that the defendant had a fair trial, and that the judgment was not disproportionate to the injuries suffered.

The judgment is therefore affirmed.    AFFIRMED.